**MOSEL VITELIC CORP., Plaintiff,**

v.

**MICRON TECHNOLOGY, INC., Defendant.**

**Micron Technology, Inc., Counter–Plaintiff,**

v.

**Mosel Vitelic Corp. and Mosel Vitelic, Inc., Counter–Defendants.**

**No. CIVA 98–449–GMS.**

United States District Court, D. Delaware.

March 24, 2000.

Richard D. Kirk, James Hitchens, Wilmington, DE, Robert B. Morrill, Russell L. Johnson, Skjerven, Morrill, MacPherson, Franklin & Friel, San Jose, CA, Raphael V. Lupo, Mark G. Davis, McDermott, Will & Emery, Washington, DC, for plaintiff.

Richard K. Herrmann, Mary B. Matterer, Blank, Rome, Comisky & McCauley, Wilmington, DE, William A. Streff, Jr., Russell E. Levine, Kirkland & Ellis, Chicago, IL, Jay I. Alexander, Kirkland & Ellis, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

SLEET, District Judge.

On February 8, 2000, Micron Technology, Inc. ("Micron") filed several motions in limine in this action for patent infringement. In its fifth motion, Micron asks the court to impose a sanction against Mosel Vitelic Corp. and Mosel Vitelic, Inc. (collectively referred to as "Mosel") because the initial drafts of the opinion letters which serve as the basis for Mosel's advice of counsel defense were destroyed after patent counsel met with the litigators to revise them. As a result, Micron argues, it is not possible to determine whether these opinions were objective and independent or, instead, tainted by the suggestions of trial attorneys who were representing Mosel in a hotly-contested litigation at the time. Under the circumstances, the court concludes that an adverse inference instruction is warranted. Also, after the close of evidence, the court will also consider whether the conduct of Mosel's counsel was sufficiently egregious to render this case exceptional and, thus, justify an award of attorney's fees to Micron.

## I. BACKGROUND.

On March 12, 1999, this court entered a scheduling ordered which provided that, inter alia, "[t]he parties will inform each other whether they intend to rely upon the advice of counsel in defense to charges of willful infringement and will produce to each other copies of all opinions and related material by June 30, 1999." Four days after the entry of this order, Micron served a series of document requests upon Mosel. Most relevant to the pending motion, Micron requested (1) "all documents related to any study, investigations, analysis, or evaluation of any of the Micron patents or any of their foreign counterparts" and (2) "[f]or each claim of the Micron patents that Mosel contends it does not willfully infringe, all documents referring or relating to each such contention."

In April of 1999, Mosel retained a patent attorney by the name of Michael Dergosits to render an opinion as to the validity of Micron's patents in suit and whether Mosel's accused products infringed these patents. At the time that he was retained, Mr. Dergosits was aware that his opinion letters would be used to support Mosel's defense to willful infringement in this lawsuit.

Over the next several months, Mr. Dergosits occasionally met with a number of Mosel's trial attorneys at their law firm. During these meetings, Mr. Dergosits and litigation counsel discussed, inter alia, the

content of his opinion letters. In particular, on June 30th, Mr. Dergosits met with two sets of trial attorneys. In the morning, he spoke with four lawyers, including lead counsel, to discuss his opinions concerning Micron's two "circuit" patents. In the afternoon, he met with two additional lawyers to discuss his opinions concerning Micron's two "process" patents. The following month, on July 24th, Mr. Dergosits repeated this process, first meeting with lead counsel and one other attorney to further discuss his opinions on the "circuit" patents and, then, meeting with the same lawyers who were assigned to defend against the "process" patents.

At each meeting, Mr. Dergosits distributed the most recent draft of his opinion letters. He then "went through the opinion[s with litigation counsel] word for word, line by line." According to Mr. Dergosits, he showed these attorneys the rough drafts so that any factual errors which they might have contained could be corrected.

Mr. Dergosits has testified that, at the end of these meetings, he would gather up the copies that he had previously distributed to the attorneys, incorporate the changes which were contained within these copies into a master copy, "[a]nd then all of those marked up versions were thrown in the trash." In other words, Mr. Dergosits "only left with the master copy, and the others were thrown in the trash right there." Mr. Dergosits would then return to his office and incorporate the changes contained in the master copy into the opinion letter saved on his computer. Pursuant to his firm's policy, he would save the new version of each opinion letter over the old one. The master copy was then discarded, along with any other notes that might have been taken during the process.

As a result, the only versions of the four opinion letters which presently exist are the final ones that were sent to Mosel's vice president and general counsel, Mark Grant, in late July or early August of 1999. Mr. Grant has testified that he did not know that Mr. Dergosits was meeting with litigation counsel prior to the submission of these final opinion letters. According to Mr. Grant, he did not know that Mr. Dergosits had made drafts of these letters or that litigation counsel had reviewed these drafts and made changes to them prior to their submission to Mosel. Finally, Mr. Grant testified that he was not aware that Mr. Dergosits had also discarded the prior drafts and other notes which he had taken during the process.

Mosel's lead counsel has also represented to the court that, contrary to Mr. Dergosits' deposition testimony, no drafts were ever discarded in the presence of Mosel's trial attorneys. Instead, lead counsel claims that Mr. Dergosits left these meetings with all of the copies in hand. Although he may have later thrown away these copies at his office, lead counsel contends that they were not discarded in front of the trial attorneys. Furthermore, lead counsel has stated that he was not aware that Mr. Dergosits was discarding the previous versions of his work.

Finally, although Mr. Dergosits had once appeared as an expert witness in a case against Mosel where it was represented by many of the same attorneys in this matter, it seems that Mr. Dergosits was only counsel of record in that action. As a result, he did not draft any opinion letters in that case. Consequently, it does not seem as if either litigation counsel or Mosel was aware that it was the practice of his firm to "write over the previous version of the document when edits were made."

## II. DISCUSSION.

A party, who is aware that evidence might be relevant to a pending or

future litigation, has an affirmative duty to preserve this material. *See Howell v. Maytag,* 168 F.R.D. 502, 505 (M.D.Pa. 1996) (citing *Baliotis v. McNeil,* 870 F.Supp. 1285, 1290 (M.D.Pa.1994)); *accord Telecom Intn'l Am., Ltd. v. AT & T Corp.,* 189 F.R.D. 76, 81 (S.D.N.Y.1999) (citing, *inter alia, Kronisch v. United States,* 150 F.3d 112, 126 (2d Cir.1998)). This duty extends to that party's attorneys. In fact, as the *Telecom* court stated, "the obligation to preserve evidence runs *first* to counsel, who then has a duty to advise and explain to the client its obligations to retain pertinent documents that may be relevant to the litigation." 189 F.R.D. at 81 (emphasis added) (relying on *Kansas-Nebraska Natural Gas Co. v. Marathon Oil Co.,* 109 F.R.D. 12, 18 (D.Neb.1983)). Thus, when a party or its counsel fails to preserve relevant evidence, the court has the power to impose an appropriate sanction. *See Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 888 (S.D.N.Y. 1999).

In making this determination, the court must consider the following three factors: the culpability of the party who destroyed or failed to preserve the evidence; the degree of prejudice suffered by the innocent party; and the availability of less severe sanctions that would avoid unfairness to this party while, at the same time, deterring similar misconduct in the future. *See Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir.1994); *accord Mutual Federal Sav. & Loan Ass'n v. Richards & Assocs., Inc.,* 872 F.2d 88, 92 (4th Cir.1989) (citing *Wilson v. Volkswagen of America, Inc.,* 561 F.2d 494, 503–06 (4th Cir.1977)). Applying these factors to this situation, the court concludes that an instruction which allows the jury to draw an adverse inference from the circumstances surrounding the destruction of Mr. Dergosits' notes and drafts as well as

a possible award of attorney fees at the end of this case are warranted.

**A. The Discarded Materials Were Relevant To This Litigation And, To Some Extent, Discoverable.**

In opposition to Micron's motion, Mosel primarily argues that Mr. Dergosits' notes and rough drafts are not discoverable since they fall within the attorney-client or work product privileges. *See, e.g., Steelcase Inc. v. Haworth, Inc.,* 954 F.Supp. 1195, 1198–99 (W.D.Mich.1997) (relying on *Thorn EMI North Am., Inc. v. Micron Technology, Inc.,* 837 F.Supp. 616, 621 (D.Del.1993)). Because Micron has no right to view these materials, Mosel contends, the computer company could not have suffered any prejudice as a result of their destruction.

This is not that first time that this court has heard a patent attorney invoke the holding of the *Thorn* decision as if it were binding precedent. However, as the Third Circuit has made clear, "there is no such thing as 'the law of the district.'" *See Threadgill v. Armstrong World Industries, Inc.,* 928 F.2d 1366, 1371 (3d Cir. 1991). In other words, while the opinion of one district judge may be found to be persuasive, it is not binding on another district judge (even if that judge happens to sit in the same district). *See United States v. Articles of Drug Consisting of 203 Paper Bags,* 818 F.2d 569, 572 (7th Cir.1987) (cited in *Threadgill,* 928 F.2d at 1371 n. 7).

Of course, a number of judges have agreed with *Thorn's* reasoning. *See, e.g., Dunhall Pharmaceuticals, Inc. v. Discus Dental, Inc.,* 994 F.Supp. 1202, 1209–11 (C.D.Cal.1998) (citing, *inter alia, Steelcase,* 954 F.Supp. at 1199). Others, however, have not (at least not entirely). *See Cordis Corp. v. SciMed Life Systems, Inc.,* 980 F.Supp. 1030, 1032–33 (D.Minn.1997);

*Electro Scientific Indus., Inc. v. General Scanning, Inc.,* 175 F.R.D. 539, 544–46 (N.D.Cal.1997). In other words, "[t]he district courts have split on this issue." *See Steelcase,* 954 F.Supp. at 1199; *see also Electro Scientific,* 175 F.R.D. at 544 (N.D.Cal.1997) ("There is a division of opinion in the authorities on this matter."). *Thorn* itself recognized as much when it stated that it would "decline[ ] to follow the decisions" in this other line of cases. 837 F.Supp. at 622.

In addition, the approach adopted in *Thorn* has recently come under attack as being too narrow or rigid. *See, e.g., Cordis,* 980 F.Supp. at 1033; *Electro Scientific,* 175 F.R.D. at 545. As *Cordis* observed, by limiting the waiver of the privilege only to those matters which are communicated to the client, *Thorn* and its progeny have effectively encouraged patent counsel to place only the most favorable version of the facts and the law in their opinion letters, even if these attorneys are aware of other information which is far less helpful to their client. 980 F.Supp. at 1033 n. 1 ("We doubt that the law would intend, however inadvertently, to reward incompetence, or willful artifice, by insulating such opinions from searching scrutiny."). And, as *Electro Scientific* explained,

> Documents in the files of [patent or opinion] counsel might be highly probative [on the issues] of whether [the client] in fact received additional communications from counsel about the issues addressed in the opinion letter and ... whether any such additional communications included views, information, or analysis that w[ere] in any material way different from the views, information, or analysis in that letter.
>
> ... It is possible that documents in opinion counsel's work product file could reflect very different analyses and con-

clusions than [those which were] set forth in the one disclosed letter. The fact that the analyses and conclusions in the lawyer's private file were clearly at odds with the content of the disclosed opinion would tend to support an inference that there were additional communications between client and [opinion] counsel and that, in those communications, the client received opinions that were not consistent with the views expressed in the letter.

> ... [I]t would be ... irrational to assume that there could be no relationship between what counsel really thought (as reflected in [their] private papers) and what [counsel] in fact communicated to [the] client. In this important sense, evidence about what really was in the lawyer's mind could be quite relevant to what really was in the client's mind.

175 F.R.D. at 545.

This court finds the reasoning of the *Cordis* and *Electro Scientific* courts to be persuasive. Put differently, this court is not persuaded that the reasoning in *Thorn* ultimately leads to an appropriate result. As previously stated, by holding that information contained within patent counsel's files but not disclosed to the client "is probably not probative of [the client's] intent" and, therefore, "is probably not relevant" and, thus, "is not discoverable," 837 F.Supp. at 622, *Thorn* effectively encourages patent attorneys to deliberately omit damaging information from their opinion letters in order to insulate their clients from a finding of willful infringement. Furthermore, because both attorney and client know why the advice of counsel is being sought, their relationship has the potential to be premised upon the understanding (whether explicit or implicit) that only favorable information should be disclosed. This court, like the one in *Cordis,*

does not believe that the law should encourage or reward, even if inadvertently, the creation of opinion letters that, while facially valid, are "fraught with ineptitude [or] error" in an effort to protect the client. 980 F.Supp. at 1034 n. 1. Therefore, in this court's opinion, to the extent that Mosel relied on *Thorn* as an automatic shield for the work product of its patent counsel, it did so at its own peril. With that said, the court turns to its discussion of the appropriate sanctions.

## B. The Appropriate Sanctions.

■ Given the clear split of authority in this particular area and the lack of any appellate guidance on the matter, the decision by Mr. Dergosits to discard or destroy all prior drafts of his opinion letters, including the ones which he had reviewed with litigation counsel "word for word" and "line by line" was highly questionable. At a minimum, preserving his drafts and other notes would have given the court an opportunity to examine these materials in order to determine the extent to which they should be shielded from discovery. *Cf. Parry v. Highlight Indus., Inc.*, 125 F.R.D. 449, 451 (W.D.Mich.1989) (emphasizing the importance of *in camera* review). Thus, if Mr. Dergosits' prior drafts contained "very different analyses and conclusions" than those which he set forth in his opinion letters, Micron would seem entitled to this material since it might support an inference that these contrary results were somehow communicated to the client. *See Electro Scientific* 175 F.R.D. at 545.

Moreover, because litigation counsel made changes to the drafts of the opinion letters and because Mr. Dergosits subsequently incorporated these changes into the final version of the opinion letters which he sent Mosel, it is not now possible to determine whether Mr. Dergosits' opinions were his own or, instead, shaped by the views of the trial attorneys who were representing Mosel in a highly contentious litigation. *Cf. Cordis*, 980 F.Supp. at 1034 (finding "no prospect for ... allowing the [p]laintiff to peruse the legal research and preliminary drafts of the opinion letters ... *unless* those drafts were reviewed and/or edited by the employees or agents of the [d]efendant") (emphasis).

Here, Mosel's litigation counsel reviewed *and* edited at least two drafts of each one of Mr. Dergosits four opinion letters. As attorneys who were representing Mosel at the time, trial counsel was acting as an agent of its client. *See, e.g., Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir.1994). Furthermore, Mr. Dergosits testified that these attorneys were present at the end of the meetings when he discarded of the drafts that contained their hand-written changes.[1] Although Mr. Grant has disavowed any knowledge of these activities, counsel's conduct is deeply troubling.

Given the severity of the situation, the court believes that it would be warranted in striking Mosel's advice of counsel defense. While this sanction would undoubtedly punish the client for the errors of its counsel, countless federal courts have held that "the fact that the client is affected by the derelicts of counsel is not a justification for excusing counsel's conduct ...." *See, e.g., Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 743 (7th Cir. 1998) (citing *Link v. Wabash R.R.*, 370

---

1. Although lead counsel disputes this contention, it appears that he was not present at the meetings that Mr. Dergosits had with the attorneys assigned to the "process" case. Thus, it is distinctly possibly that some of the attorneys on the trial team witnessed Mr. Dergosits throw away his drafts. At this stage of the proceedings, however, the court cannot reach a definitive conclusion on the matter.

U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)); *Damiani v. Rhode Island Hosp.,* 704 F.2d 12, 16–17 (1st Cir.1983) (citing same). As the Supreme Court explained in *Link,* a client who chooses a particular attorney as its representative in a lawsuit "cannot [later] avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the lawyer.'" 370 U.S. at 633–34, 82 S.Ct. 1386 (quoting *Smith v. Ayer,* 101 U.S. 320, 326, 11 Otto 320, 25 L.Ed. 955 (1879)).

### 1. Mosel's culpability and the extent of its personal responsibility.

█ The primary reason why this court will not impose such a severe sanction on Mosel is because the Third Circuit has repeatedly "emphasized [that it is more appropriate to] visit[ ] sanctions directly upon the delinquent lawyer, rather than on a client who is not actually at fault." *See, e.g., Carter v. Albert Einstein Med. Ctr.,* 804 F.2d 805, 807 (3d Cir.1986). Because it does not appear as if Mr. Grant was aware that patent and trial counsel were meeting to review and edit the drafts of the opinion letters, the court does not believe that it would be fair to strip Mosel of the advice of counsel defense. *Cf. Dunbar v. Triangle Lumber & Supply Co.,* 816 F.2d 126, 128–29 (3d Cir.1987) (placing great emphasis on "the extent of the party's personal responsibility") (relying on *Poulis v. State Farm Fire & Cas. Co.,* 747 F.2d 863, 868 (3d Cir.1984); *Scarborough v. Eubanks,* 747 F.2d 871, 875 (3d Cir. 1984)). *But cf. Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1229 (9th Cir.1997) (recognizing on an "imputed knowledge"

argument when awarding attorney fees) (citing *Hughes v. Novi Amer. Inc.,* 724 F.2d 122, 125–26 (Fed.Cir.1984)).

### 2. The degree of prejudice suffered by Micron.

█ Furthermore, while Micron has been prejudiced to some extent by the destruction of Mr. Dergosits' notes and drafts, the only real harm which the computer company appears to suffer if the defense is not stricken is the possibility that the jury might conclude that Mosel reasonably relied on the advice of counsel and, thus, did not willfully infringe. Consequently, the only real loss which Micron might suffer is the potential to obtain treble damages. Increased damages for willful infringement, however, are primarily intended to punish wrongdoers for their knowing or intentional misconduct and to deter similar activity in the future. *See Avia Group Intn'l, Inc. v. L.A. Gear of California, Inc.,* 853 F.2d 1557, 1566 (Fed. Cir.1988); *Smith Corona Corp. v. Pelikan, Inc.,* 784 F.Supp. 452, 479 (M.D.Tenn. 1992). They are not intended to confer a windfall upon a patentee. This is one of the reasons why the decision whether to "increase the damages up to three times the amount found or assessed" is left to the court. *See* 35 U.S.C. § 284 (1994).

█ Moreover, willful infringement is determined by considering the "totality of the circumstances," which includes conduct that has occurred during the course of the litigation. *See Virginia Panel Corp. v. MAC Panel Corp.,* 133 F.3d 860, 867 (Fed.Cir.1997). If Mosel elects to assert its advice of counsel defense at trial, Micron has the opportunity to conduct a very thorough cross-examination of Mr. Dergosits, paying particularly close attention to the facts and circumstances surrounding the destruction of his notes and drafts. At

the conclusion of the questioning, Micron would certainly be entitled to an instruction which would permit the jury to draw an adverse inference from the failure to preserve this evidence. *See, e.g., Howell,* 168 F.R.D. at 507–08; *Donohoe v. American Isuzu Motors, Inc.,* 157 F.R.D. 238, 244–45 (M.D.Pa.1994).

For example, Mr. Dergosits has testified that, primarily, only stylistic or cosmetic changes were made to the drafts of his opinion letters. According to him, most of these changes involve the correction of typographical errors. Mr. Dergosits also testified that only one substantive change was made. Specifically, one of the trial attorneys noticed that a particular step associated with one of the "process" patents did not take as long as Mr. Dergosits had thought. Unfortunately, there is no way to prove or disprove these contentions now since the drafts which incorporated these changes have been destroyed. Thus, at a minimum, it would seem that Micron is entitled to an instruction which would allow the jury to infer that litigation counsel suggested or made other changes to these drafts. The jury might also be able to infer that these prior drafts contained information that contradicted some of the statements made in the final versions of the letters.

In addition, even though Mr. Grant has disavowed any knowledge of counsel's activities, it would seem that this issue turns on a credibility determination which the jury must resolve when considering the totality of the circumstances surrounding Mosel's advice of counsel defense and the conduct of its attorneys. *See, e.g., Amsted Indus., Inc. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 183 (Fed.Cir.1994) ("It is within the province of the jury to determine the credibility of a witness and the weight to be given his testimony; the jury is not required to accept testimony as true, even if it is uncontradicted.") (cited with approval in *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1192–93 (Fed.Cir.1998)). Thus, allowing Mosel to invoke its advice of counsel defense at trial while, at the same time, affording Micron the opportunity to fully explore all of the circumstances surrounding the retention of Mr. Dergosits and the preparation of his opinion letters and, then, providing the jury with an instruction which allows them to draw an adverse inference from the destruction of evidence in this case would seem to be an approach which is fair to all parties.

### 3. The need for an effective deterrent.

Of course, commentators have noted that adverse inference instructions are one of the least severe sanctions which the court can impose and, therefore, often have very little deterrent effect. *See* Kristin Adamski, *A Funny Thing Happened on the Way to the Courthouse: Spoliation in Illinois,* 32 J. Marshall L.Rev. 325, 341–42 (1999) (citing Charles R. Nesson, *Incentives to Spoliate Evidence in Civil Litigation: The Need for Vigorous Judicial Action,* 13 Cardozo L.Rev. 793, 794–95 (1991)). Furthermore, a jury instruction does not penalize the individuals who appear to be the most at fault—namely, Mosel's attorneys.

Therefore, in order to deter similar misconduct from occurring in the future, the court will reserve decision on whether the circumstances surrounding the destruction of evidence in this case are sufficiently exceptional to justify an award of attorney fees to Micron. *See* 35 U.S.C. § 285 (1994). After reviewing the Federal Circuit precedent on this issue, there appears to be authority for assessing fees against the attorneys themselves instead of simply their clients, which might be

warranted in this case given the circumstances. *Cf. Porter v. Farmers Supply Service, Inc.*, 790 F.2d 882, 887 (Fed.Cir. 1986) (holding counsel and client jointly and severally liable) (relying on, *inter alia, In re Oximetrix, Inc.*, 748 F.2d 637, 644 (Fed.Cir.1984); *Colt Indus. Oper. Corp. v. Index–Werke K.G.*, 739 F.2d 622, 623–24 (Fed.Cir.1984)).

The reason why the court has declined to come to a conclusion now on this particular matter is because there appears to be a great deal of controversy over what exactly transpired between patent and litigation counsel. For example, given some of the inconsistencies in the record, it is distinctly possible that at least two attorneys on Mosel's trial team were aware that Mr. Dergosits was not preserving the drafts of his opinion letters since these two lawyers may have actually watched Mr. Dergosits discard the copies of the drafts which they had just edited. Of course, in Mosel's defense, Mr. Grant has testified that he knew nothing about these activities. Likewise, lead counsel has represented that he was not aware that Mr. Dergosits was destroying his notes or drafts. Nevertheless, Mr. Dergosits had appeared opposite Mosel in an earlier patent litigation. Although he does not appear to have provided any opinion letters, the court cannot say with certainty that his practice of destroying all of his prior notes and drafts was not known to Mosel or its litigation counsel at the time he was retained. As a result, the court must reserve decision on this issue of attorney fees until the close of evidence at trial.

## III. CONCLUSION.

The court believes that an instruction which informs the jury that they may draw an adverse inference from Mr. Dergosits' destruction of documents avoids the potential for unfairly punishing Mosel for the conduct of its attorneys while, at the same time, giving Micron a fair opportunity to prove its willful infringement case. However, in order to deter the type of conduct which occurred here, the court will consider whether the activities of Mosel's counsel are sufficiently egregious to render this case exceptional and, thus, justify and award of attorney fees in favor of Micron.

For these reasons, IT IS HEREBY ORDERED that:

1. The Fifth Motion in Limine (D.I. 583) is GRANTED IN PART and DENIED IN PART;

2. While Mosel Vitelic Corp. and Mosel Vitelic, Inc. may advance an advice of counsel defense on the issue of willful infringement at trial, the court will instruct the jury that they may draw an adverse inference from the destruction of evidence by patent counsel; and

3. The court will reserve ruling on whether this case presents sufficiently exceptional circumstances to call for an award of attorney fees in favor of Micron Technology, Inc.