NOVARTIS PHARMACEUTICALS COR-
PORATION, Novartis AG, Novartis
Pharma AG, and Noavrtis International
Pharmaceutical Ltd., Plaintiff,

v.

EON LABS MANUFACTURING,
INC., Defendant.

No. CIV.A.00–800–JJF.

United States District Court,
D. Delaware.

March 28, 2002.

See, also, 206 F.R.D. 392.

Stuart B. Young, Young, Conaway, Star-
gatt & Taylor, Wilmington, DE, for plaintiffs.

George H. Seitz, III, Seitz, Van Ogtrop &
Green, P.A., Wilmington, DE, for defendant.

1. The Original Complaint was filed only by No-
vartis Pharmaceuticals Corporation on August 30, 2000.

## MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is Plaintiffs'
Motion To Compel Discovery Materials Im-
properly Withheld by Eon (D.I.139). By
their Motion, Plaintiffs seek to compel vari-
ous categories of documents. However, this
Memorandum Opinion, will focus only on the
portion of Plaintiffs' Motion which seeks to
compel the production of all documents un-
derlying Defendant's advice of counsel de-
fense to Plaintiffs' claim of willful infringe-
ment. For the reasons set forth below, the
Court will compel Defendant to produce all of
the documents underlying its advice of coun-
sel defense to Plaintiffs' claim of willful in-
fringement.

## I. Background

In June 1998, Defendant Eon Labs Manu-
facturing, Inc. (hereinafter "Eon") prepared
and submitted an application for Federal
Drug Administration (hereinafter "FDA")
approval of a cyclosporin-based product in-
tended for sale to transplant patients. (D.I.
145 at 4). On January 13, 2000, the FDA
approved Eon's application. (D.I. 145 at 4).

In an Amended Complaint filed on Febru-
ary 8, 2001, Plaintiffs Novartis Pharmaceuti-
cals Corporation, Novartis AG, Novartis
Pharma AG, and Novartis International
Pharmaceutical Ltd. (collectively "Novartis")
brought this action against Eon, alleging,
among other things, that Eon willfully in-
fringed Novartis' United States Patent No.
5,389,382 (hereinafter " '382 Patent").[1] (D.I.
145 at 1). As a defense to Novartis' charge
of willful infringement, Eon relies on a writ-
ten opinion it received in March 2000 from its
patent counsel, Thomas Pontani, Esquire,
concluding that it is "unlikely" that Eon is
infringing the '382 Patent. (D.I. 145 at 7).
Mr. Pontani's law firm, Cohen, Pontani, Lie-
berman & Pavane (hereinafter "Cohen, Pon-
tani"), also represents Eon as trial counsel in
this litigation.

During the course of discovery, Novartis
requested that Eon produce all written and

oral legal advice it received from Cohen, Pontani with respect to the infringement, invalidity, and unenforceability of the '382 Patent, including all documents underlying that advice. (D.I. 145 at 7). In response, Eon produced Mr. Pontani's March 2000 non-infringement opinion letter and all documents related to communications between Eon and Mr. Pontani concerning the opinion. (D.I. 145 at 7; D.I. 152 at 4). Shortly after Novartis received these documents, Novartis wrote to Eon, requesting that Eon supplement its production to include all documents and communications that were considered by Cohen, Pontani in rendering its advice to Eon. (D.I. 145 at 8). Eon responded, offering to produce communications between Mr. Pontani and Eon relating only to the non-infringement opinion letter and refusing to produce any work product materials utilized by Mr. Pontani but not communicated to Eon. (D.I. 145 at 8; 152 at 4). As a result of Eon's unwillingness to produce the work product materials, Novartis filed the instant Motion, seeking to compel Eon to produce all written and oral advice, including all documents underlying that advice, that Eon received from Cohen, Pontani, which either directly or indirectly relates to the '382 Patent. (D.I. 139; D.I. 145).

## II. Discussion

By its Motion, Novartis contends that because Eon has decided to rely on the legal advice of its patent counsel as a defense to Novartis' charge of willful infringement, Eon has waived its privilege with respect to all documents in Cohen, Pontani's files which either directly or indirectly relate to the subject matter of Mr. Pontani's legal advice to Eon. (D.I. 145 at 8). Citing a broad range of cases in this district and others, Novartis contends that all information relied upon by Mr. Pontani in forming his opinion is discoverable, regardless of whether that information was communicated to Eon, because it is highly probative of the accused infringer's state of mind. (D.I. 145 at 18–20); *See Mosel Vitelic Corp. v. Micron Technology, Inc.*, 162 F.Supp.2d 307 (D.Del.2000); *Dunhall Pharma., Inc. v. Discus Dental, Inc.*, 994 F.Supp. 1202 (C.D.Cal.1998); *Hoover Universal, Inc. v. Graham Packaging Corp.*, 44

U.S.P.Q.2d 1596 (C.D.Cal.1996); *Mushroom Assocs. v. Montery Mushrooms, Inc.*, 24 U.S.P.Q.2d 1767, 1992 WL 442892 (N.D.Cal. 1992). Additionally, because Eon's patent and trial counsel work for the same law firm, Novartis contends that Eon must produce all legal advice it received from *any* member of the Cohen, Pontani law firm with regard to the subject matter of Mr. Pontani's opinion. (D.I. 145 at 15–16; D.I. 156 at 5).

In response, Eon relies on the case of *Thorn EMI N. Am. v. Micron Technology*, 837 F.Supp. 616 (D.Del.1993) and its progeny. Eon contends that materials considered by patent counsel in rendering an opinion, but not communicated to the alleged infringer, are protected as work product and not discoverable because they are irrelevant to the alleged infringer's state of mind. (D.I. 152 at 4–5). Because Eon has produced the opinion of its patent counsel and all documents related to communications between Eon and its patent counsel concerning that opinion, Eon contends that Novartis' Motion to compel the production of other documents in Cohen, Pontani's files should be denied pursuant to *Thorn*. (D.I. 152 at 7).

The decisions in *Thorn* and *Mosel* reflect consistent views on the extent to which the attorney-client privilege is waived when an accused infringer relies on the opinion of counsel as a defense to a claim of willful infringement. *See Thorn*, 837 F.Supp. 616; *Mosel*, 162 F.Supp.2d 307. Specifically, both decisions agree that communications between the attorney and his or her client are discoverable. *Id.*

With respect to attorney work product, however, *Thorn* and *Mosel* differ with regard to the extent to which they permit inquiry into these materials. Despite their different views, both *Thorn* and *Mosel* focus their respective analyses on the accused infringer's state of mind. In this regard, the issue of whether certain documents are discoverable turns for both courts on the question of whether the documents and communications sought are sufficiently probative of the accused infringer's state of mind.

The narrower view, as reflected in *Thorn*, concludes that only communications between

counsel and the accused infringer are probative of the accused infringer's state of mind. *See Thorn,* 837 F.Supp. at 622. Thus, *Thorn* limits the scope of discovery to communications between counsel and the accused infringer, and does not permit inquiry into counsel's work product. *Id.*

The broader view reflected in *Mosel* concludes that counsel's work product is highly probative of the accused infringer's state of mind. *See Mosel,* 162 F.Supp.2d at 312. In so holding, the *Mosel* court reasoned "... [I]t would be irrational to assume that there could be no relationship between what counsel really thought (as reflected in [their] private papers) and what [counsel] in fact communicated to [the] client." *Mosel,* 162 F.Supp.2d at 312 (citing *Electro Scientific Indus., Inc. v. General Scanning, Inc.,* 175 F.R.D. 539, 545 (N.D.Cal.1997)). Thus, the *Mosel* view permits discovery into counsel's work product, as well as any communications between counsel and the accused infringer. *See id.*

If the Court accepts the premise that the analysis for this discovery issue should focus only on the accused infringer's state of mind, depending on the facts of the dispute, the Court would rest its decision somewhere between *Thorn* and *Mosel* since both opinions represent a reasonable approach. However, the Court is persuaded that it should modify its analysis from those undertaken by *Thorn* and *Mosel.* In the Court's view, the starting point for the analysis is the infringer decision to waive the attorney-client privilege.

A waiver is defined as "the voluntary, intentional relinquishment of a known right." BLACK'S LAW DICTIONARY 1417 (Special Deluxe 5th ed.1979). An express waiver is absolute. *Id.* Where, as here, a party relies on the advice of counsel defense to a charge of willful infringement, the Court concludes that that party has expressly waived its privilege with respect to attorney-client communications and work product documentation. Having concluded that these privileges are waived, the Court concludes that everything with respect to the subject matter of counsel's advice is discoverable, despite the protection that is normally afforded to attorney-

client communications and work product material.[2]

The Court, under a somewhat different set of facts, reached a similar conclusion in *RCA Corp. v. Data General Corp.,* 1986 WL 15693 (D.Del. July 2, 1986). In *RCA,* Data General Corp. (hereinafter "Data General") relied on the advice of its counsel as a defense to the charge of willful infringement. *See RCA,* 1986 WL 15693, *1. RCA Corp. (hereinafter "RCA") subsequently sought all documents relating in any way to opinions on the validity or infringement of the patent at issue. *Id.* Data General objected, arguing that it was entitled to withhold all documents which were not "directly related" to the opinions of counsel. *Id.* The Court recognized that attorney-client communications are generally not subject to disclosure; however, the Court noted that a client waives this privilege by asserting reliance upon the advice of counsel as an essential element of its defense. *Id.* The Court held that a waiver of the attorney-client privilege in this context is not limited to documents directly related to counsel's opinion, but rather, extends to all documents relating to the subject matter of counsel's advice. *Id.*

RCA also sought to compel two specific documents from a third party, Price Waterhouse, Data General's auditor. *See RCA,* 1986 WL 15693, *2. At the request of Data General, Price Waterhouse withheld these documents on the ground that they were protected by work product immunity. *Id.* Specifically, Data General argued that the two documents in question were prepared by an agent of Data General and reflected the mental impressions of a Data General attorney, and concerned pending or anticipated litigation. *Id.* The Court recognized that, under Federal Rule of Civil Procedure 26(b)(3), attorney work product is not discoverable absent a showing of extraordinary circumstances. *Id.* (citing *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 593 (3rd Cir.1984)); *see also* Fed.R.Civ.P. 26(b)(3) (permitting discovery into work product only upon a showing of "substantial need" and "undue hardship" in obtaining the substantial equivalent of the information by other means). However, this

---

**2.** The Court recognizes that an alleged infringer could incur undue prejudice as a result of the scope of discovery required. Accordingly, in the future, the Court will consider separating the issues of willfulness and damages from the other patent issues.

Court concluded that where a party asserts the advice of counsel as an essential element of its defense, work product immunity, like attorney-client privilege, is also waived with respect to the subject matter of counsel's advice. *See RCA*, 1986 WL 15693, *2. Accordingly, this Court held that work product immunity was waived to the extent that the Price Waterhouse documents related to Data General's opinion of counsel. *Id.*

Although the issues before the Court in *RCA* were more discrete than in the instant case, there is no reason why an accused infringer's waiver of the attorney-client privilege should not be considered unlimited, and therefore, apply broadly to any and all materials available to the attorneys rendering the legal advice. In the Court's view, it is critical for the patentee to have a full opportunity to probe, not only the state of mind of the infringer, but also the mind of the infringer's lawyer upon which the infringer so firmly relied. There is no reason why the alleged infringer's waiver of the attorney-client privilege should not be considered absolute, encompassing materials typically protected by the work product doctrine.

Further the Court believes this approach, in addition to being consistent with the principles of waiver, supports the policy considerations of an advice of counsel defense. Specifically, by focusing on the waiver as the gateway for permissible discovery, the defense will most likely only be invoked by infringers who prudently and sincerely sought competent advice from competent counsel. Moreover, focusing on the infringer's waiver rather than state of mind may reduce the chances of legal gamesmanship creeping into the practice of rendering infringement and validity opinions.

In sum, because Eon has relied on the advice of counsel defense, the Court concludes that Eon has waived any privilege that may pertain to those documents and communications related in any way to its counsel's opinion. Accordingly, the Court will grant Novartis' Motion To Compel to the extent it seeks the production of all documents relied upon in forming Mr. Pontani's opinion.

As for Novartis' additional request for production, the Court is also persuaded that Eon should be compelled to produce all legal advice it received from *any* member of the Cohen, Pontani law firm with regard to the subject matter of Mr. Pontani's opinion. Eon has not only elected to engage in the unconventional and risky arrangement of having opinion and trial counsel from the same law firm, but Eon's opinion counsel, Mr. Pontani, has actually entered an appearance in this matter. Because the Court cannot differentiate between opinion and trial counsel, the Court will grant Novartis' Motion To Compel to the extent it seeks the production of all legal advice Eon received from the Cohen, Pontani law firm relating to the subject matter of Mr. Pontani's opinion.

### III. Conclusion

For the reasons discussed, the Court will grant Novartis' Motion To Compel (D.I.139) to the extent it seeks the production of all documents relied upon in forming the basis of Mr. Pontani's opinion, and the production of all legal advice Eon received from the Cohen, Pontani law firm relating to the subject matter of Mr. Pontani's opinion.

An appropriate Order will be entered.