**SIMMONS, INC., Plaintiff,**

v.

**BOMBARDIER, INC. and Bombardier Motor Corp. of America, et al., Defendants.**

**No. 04–0040 (ESH).**

United States District Court, District of Columbia.

March 10, 2004.

---

William Paul Atkins, Pillsbury Winthrop, LLP–VA, McLean, VA, Rick B. Hoggard, Ray, Quinney & Nebeker, Salt Lake City, UT, Scott Jeffrey Pivnick, Pillsbury Winthrop LLP, McLean, VA, for Defendants.

Mark E. Ungerman, Fulbright & Jaworski, L.L.P, Washington, DC, for Plaintiff.

## *MEMORANDUM OPINION*

HUVELLE, District Judge.

Plaintiff Simmons, Inc. filed a patent infringement suit against Bombardier, Inc. and Bombardier Motor Corporation of America (collectively "Bombardier") in the United States District Court for the District of Utah. In that pending litigation, Bombardier has voluntarily produced two written opinion letters it received prior to suit from its counsel, Pillsbury Winthrop LLP, pertaining to the patent at issue. Bombardier intends to rely on the Pillsbury opinions in its defense against allegations that it willfully infringed upon Simmons' patent, by claiming that it relied in good faith upon Pillsbury's advice that Simmons' patents are invalid and not infringed by Bombardier's product.[1]

After receiving the Pillsbury opinions, Simmons served a subpoena *duces tecum* issued by this Court upon Pillsbury, seeking records related to the two opinions. Pillsbury complied with the subpoena, producing, *inter alia,* documents considered and relied upon in preparation of the opinions, correspondence with Bombardier regarding the opinions, and all invoices and time entries related to their preparation. Pillsbury did not, however, provide Simmons with requested drafts of the opinions that were not shared with Bombardier, claiming that they were protected by the attorney work-product privilege.

Simmons now moves to compel Pillsbury to produce the draft opinion letters that Pillsbury claims are privileged, arguing that any privilege with respect to the drafts was waived when Bombardier produced the final versions of the opinions. Because the Court finds that the work-product privilege continues to protect the draft opinions, Simmons' motion will be denied.[2]

## ANALYSIS

The documents Simmons seeks are within the scope of information normally protected from disclosure as work product. *See* Fed.R.Civ.P. 26(b)(3). The work-product privilege is designed to "balance the needs of the adversarial system" by "safeguarding the fruits of an attorney's trial preparation" while serving the general interest in "revealing all true and material facts relevant to the resolution of a dispute." *Hager v. Bluefield Reg'l Med. Cent., Inc.,* 170 F.R.D. 70, 75 (D.D.C.1997) (citing *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1371 (D.C.Cir.1984)). Materials relating to mental impressions, opinions and legal theories of attorneys are generally immune from disclosure to create a " 'zone of privacy' within which [an attorney can] think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. Dept. of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980); *see also In re Sealed Case,* 146 F.3d 881, 884 (D.C.Cir.1998).[3]

1. Pursuant to 35 U.S.C. § 284, Bombardier may be liable for treble damages if the infringement is found to be willful.

2. Simmons' initial motion addresses drafts of opinions dated November 21, 2000 and February 8, 2001 that were requested by a subpoena served on December 30, 2003. In its reply, Simmons requests drafts of a *third* opinion, dated December 21, 2003, that was the subject of a January 2004 subpoena issued by the United States District Court for the Eastern District of Virginia. It is unclear how Simmons expects to have this Court enforce that subpoena, and it is even more puzzling that it requests (in the proposed order attached to its reply) other work product of Pillsbury (including drafts of a motion for a preliminary injunction prepared for filing in the Utah action). Needless to say, the Court cannot order release of these items.

3. Simmons' argument that the drafts are not privileged work product because they were not "initially prepared in contemplation of litigation" is wholly without merit. (Mot. at 6.) Clearly, the work-product privilege protects only those materials lawyers prepare "in anticipation of litigation." Fed.R.Civ.P. 26(b)(3). It is equally as obvious, however, that advice-of-counsel opinion letters are considered to be created "in anticipation of litigation." *See, e.g., In re Sealed Case,* 146 F.3d at 885 (documents are protected by work-product privilege as long as lawyer rendered legal advice in order to protect client from future litigation despite fact that a "specific claim" had not yet been brought); *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 136, 152 (D.Del. 1977) ("If the primary concern of the [patent] attorney is with claims which would potentially arise in future litigation, the work product immunity applies.").

■ The work-product privilege may be waived by the voluntary release of materials otherwise protected by it. Generally, the privilege is waived only for materials "relevant to a particular, narrow subject matter," when "it would be unfair to deny the other party an opportunity to discover other facts relevant to that subject matter." *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 837 F.Supp. 616, 621 (D.Del.1993) (citing cases). There is a clear split of authority among the cases that have considered the issue of the scope of the privilege enjoyed by a party who responds to a claim of willful patent infringement by asserting an advice-of-counsel defense.[4] Some courts have applied a "broad waiver," requiring production of documents "related in any way to [the] counsel's opinion," *Novartis Pharm. Corp. v. EON Labs Mfg., Inc.*, 206 F.R.D. 396, 399 (D.Del.2002), while others advance a "narrow waiver" approach, holding that "a party's assertion of good faith reliance on advice of counsel [does not] put[] counsel's work product at issue,"

and thus, materials not shared with the client are not discoverable. *Thorn*, 837 F.Supp. at 622.

■ Simmons urges the Court to adopt the "broad waiver" approach, arguing that it would be "severely limited in testing the competency of the opinions" (Mot. at 5) if it were unable to evaluate the drafts, and that review of the drafts is required "to test whether Bombardier's reliance on the final opinions was reasonable." (Reply at 3.) While Simmons is correct that the alleged infringer's reliance on the opinion must be reasonable to wage a successful advice-of-counsel defense, initial drafts of the opinion are not necessary for this inquiry, nor is its independent assessment of the competency of the opinions appropriate.

■ The Federal Circuit has established that the willfulness of an alleged infringer rests upon a determination of the infringer's state of mind.[5] *See Read, Corp. v. Portec, Inc.*, 970 F.2d 816, 828 (Fed.Cir.

4. It is generally agreed that an alleged infringer, invoking its good faith reliance on an attorney's opinion regarding a patent, waives the *attorney-client* privilege with regard to "all communications between counsel and client concerning the subject matter of the opinion." *Steelcase, Inc. v. Haworth, Inc.*, 954 F.Supp. 1195, 1198 (W.D.Mich.1997); *see also BASF Aktiengesellschaft v. Reilly Indus.*, 283 F.Supp.2d 1000, 1003 (S.D.Ind.2003); *Thorn*, 837 F.Supp. at 621. Waiver of the attorney-client privilege is irrelevant for purposes of this motion because Simmons requests only internal drafts of Pillsbury's opinion letters that were not shared with Bombardier. Simmons' claim that courts "generally agree" that the *work-product* privilege is also waived, however, misstates the law, as highlighted by the very case it cites for that proposition. *See AKEVA L.L.C. v. Mizuno Corp.*, 243 F.Supp.2d 418, 424 (M.D.N.C.2003) ("The courts have generally split along two lines when determining the scope of work product protection waiver.").

5. The Federal Circuit has held that discovery disputes and other procedural issues unique to patent cases should be decided pursuant to the law of the Federal Circuit, as opposed to the regional circuit. *See Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75 (Fed. Cir.1984) *overruled on other grounds by Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985). There is a split of authority as to whether the scope of the waiver of the work-product privilege is a determination unique to patent litigation, *see Chimie*

*v. PPG Indus., Inc.*, 218 F.R.D. 416, 419 n. 4 (D.Del.2003), but in any event, the Federal Circuit has not yet answered that question. It does clearly delineate the nature and scope of the advice-of-counsel defense, however, providing guidance to courts facing pre-trial issues related to it. Finding the "broad waiver" cases unconvincing, one court noted that "[r]emarkably, these cases do not attempt to divine from Federal Circuit authority any controlling principle grounded in substantive patent law." *Steelcase*, 954 F.Supp. 1195.

Indeed, the better reasoned approach recognizes that reliance on an advice-of-counsel defense in patent litigation is a unique brand of the defense, rendering general advice-of-counsel discovery holdings inapposite. For example, the District of Columbia case Simmons offers as determinative, *Hager v. Bluefield Regional Medical Center*, 170 F.R.D. 70, 78 (D.D.C.1997), is easily distinguished on its facts. There, plaintiff relied upon an attorney's opinion letters in contemplation of a contract dispute, naming the attorney as an expert witness and placing the grounds for his opinion (that the contract included "illegal kickbacks") at issue. *Id.* Thus, the rule that expert witnesses must "produce all documents considered ... in the process of formulating the expert opinion, including documents containing opinions," was applied. *Id.* (citation omitted). Here, because the advice-of-counsel defense is used only to provide insight into the alleged infringer's state of mind, the same rule is not applicable, and thus, *Hager* is of no relevance.

1992), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed.Cir.1995). An important factor in determining whether a defendant willfully infringed upon another's patent is the defendant's reasonable reliance upon a competent opinion of counsel. *Id. See also Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed.Cir.1992). However, the alleged infringer's intent—not that of counsel—remains the relevant issue. *See id.* Thus, the opinion's "importance does not depend upon its legal correctness .... Rather, counsel's opinion must be thorough enough ... to instill a belief in the infringer that a court might reasonably hold the [adversary's] patent is invalid, not infringed, or unenforceable." *Id. See also Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 793 (Fed.Cir.1995). District courts applying a narrow approach, therefore, conclude that the actual competence of the opinion is irrelevant to willfulness, and thus, materials in the attorney's possession that may have a bearing upon the accuracy of the opinion are undisclosable. *See, e.g., BASF*, 283 F.Supp.2d at 1004; *Eco Mfg. LLC v. Honeywell Intern., Inc.*, 2003 WL 1888988, at *5–6 (S.D.Ind. April 11, 2003); *Steelcase*, 954 F.Supp. at 1199; *Thorn*, 837 F.Supp. at 621–22.

The Federal Circuit does not go so far as to conclude that the opinion's competence is completely irrelevant; instead, it holds that "the legal advice contained therein must be found on the totality of the circumstances to be competent such that the client was reasonable in relying upon it." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed.Cir.1998) (citing *SRI Int'l, Inc. v. Advanced Tech. Lab.*, 127 F.3d 1462, 1465 (Fed.Cir.1997)). This precedent, however, "does not mean a client must itself be able to evaluate the legal competence of its attorney's advice to avoid a finding of willfulness." *Read*, 970 F.2d at 829. Instead, the reasonableness of the accused infringer's reliance is evaluated on the basis of the opinion's apparent competency on its face, allowing for evaluation of the opinion letter's " 'overall tone, its discussion of case

law, its analysis of the particular facts, and its reference to inequitable conduct.' " *Steelcase*, 954 F.Supp. at 1198 (quoting *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 743–44 (Fed.Cir.1993)). An opinion may be incompetent such that a client unreasonably relies upon it if, for example, it contains merely conclusory statements without discussion of the facts or obviously presents "only a superficial or off-the-cuff analysis." *Id.* (citing *Read*, 970 F.2d at 829). It may also be rendered incompetent if the client intentionally withheld information from counsel so that the opinion is obviously not based upon the relevant facts. *See Comark*, 156 F.3d at 1191.

To the extent that Simmons will challenge the competency of the opinions and Bombardier's reasonable reliance on them, therefore, drafts of the opinions not shared with Bombardier are irrelevant. By virtue of the attorney-client privilege waiver, Simmons will have access to all communications between Pillsbury and Bombardier related to the opinions. Through depositions and interrogatories, moreover, it will be able to explore "what [Bombardier] knew about the law firm's independence, skill and competence to provide the opinions, ... the nature and extent of the analysis performed by the firm, [and] what [Bombardier] knew and had concluded about the credibility, value and reasonableness of the opinions." *Thorn*, 837 F.Supp. at 621. Assuming the drafts of the opinions contain any information contrary to the final versions, ordering their disclosure would do nothing except create "a substantial risk of confusion and wasted time, money, and effort as lawyers duel over the ultimate merits of an opinion when the only relevant question is whether the client honestly and reasonably relied on the opinion." *Eco Mfg.*, 2003 WL 1888988, at *8. Therefore, the Court finds the "narrow waiver" approach "broad enough to illuminate the issues found relevant by the Federal Circuit, but no broader." *Steelcase*, 954 F.Supp. at 1198, and will recognize the drafts as protected attorney work product.[6]

---

6. Some cases adopting the broad approach, moreover, improperly focus upon the attorney's state of mind as the relevant inquiry. *See, e.g., Novartis*, 206 F.R.D. at 396 ("it is critical for the

Simmons also insists that the Court adopt the "broad waiver" approach, arguing that failing to order disclosure of the drafts disregards the "rational inference that any potential negative evidence contained in the drafts was somehow communicated to Bombardier" (Mot. at 5), and "ignores the potential for litigation abuses by allowing Pillsbury and Bombardier to determine what information Simmons is entitled to have." (*Id.* at 6.) Indeed, many courts applying a broad waiver order disclosure of work product because "evidence about what really was in the lawyer's mind could be quite relevant to the issue of what *really* was in the client's mind." *Electro Scientific Indus., Inc. v. Gen. Scanning, Inc.,* 175 F.R.D. 539, 545 (1997) (emphasis added); *see also Novartis,* 206 F.R.D. at 398 (" '[I]t would irrational to assume that there could be no relationship between what counsel really thought (as reflected in their private papers) and what [counsel] in fact communicated to the client.' ") (citations omitted); *Mosel Vitelic Corp. v. Micron Tech., Inc.,* 162 F.Supp.2d 307, 312–13 (D.Del.2000) (the narrow waiver approach "effectively encourages patent attorneys to deliberately omit damaging information from their opinion letters in order to insulate their clients from a finding of willful infringement"); *Dunhall Pharm., Inc. v. Discus Dental, Inc.,* 994 F.Supp. 1202, 1205 (C.D.Cal.1998) ("[N]egative evidence contained in the attorney's files raises the reasonable circumstantial inference that the client was somehow appraised of the negative opinions.").

This reasoning, however, rests upon "the assumption of mendacity in lawyers or clients or both." *Chimie,* 218 F.R.D. at 421. It presumes that counsel would be willing to falsely represent that they turned over all communications between the client and counsel related to the opinion, while secretly holding back "what [counsel] in fact communicated to the client," *Novartis,* 206 F.R.D. at 398, or that the alleged infringer would lie about receiving "additional communications from counsel ... that was in any material way

different from the views, information or analysis in [the] letter." *Electro Scientific,* 175 F.R.D. at 545. Implicit in the "broad waiver" approach is the assumption that the "system of obtaining opinion letters regarding infringement and validity has become so corrupt that clients and attorneys both know ... that what the client really wants is a false or misleading opinion that hides the true findings and opinions of the attorney." *Chimie,* 218 F.R.D. at 420.

As the *Chimie* court concluded, advancing a waiver rule "that assumes deceit" will neither "satisfy the legitimate discovery interests of the parties to an infringement action" nor "solve the problem of perverse incentives confronting opinion writers with an eye on litigation," but will only give counsel and clients "an incentive to keep incomplete or misleading files" *Id.* In short, although the "narrow waiver" approach leaves open the potential for litigation abuses, *see Aspex Eyewear, Inc. v. E'Lite Optik, Inc.,* 276 F.Supp.2d 1084, 1093 (D.Nev.2003), the Court refuses to presume dishonesty and will not assume, in the absence of any contrary evidence, that drafts of Pillsbury's opinions are somehow probative of the Bombardier's state of mind despite the fact that they have not been shared with Bombardier. *See Thorn,* 837 F.Supp. at 622.

This, however, is not to say that abrogation of work-product protection is inappropriate under any circumstances. *See Moody v. Internal Revenue Serv.,* 654 F.2d 795, 800 (D.C.Cir.1981) (a lawyer's unprofessional behavior may vitiate the work-product privilege); *Michlin v. Canon, Inc.,* 208 F.R.D. 172, 173–74 (E.D.Mich.2002) (patent work product was properly subject to discovery because counsel had been "less than forthcoming with the court"). Simmons' suspicions conjured by Pillsbury's billing invoices "show[ing] that Pillsbury and Bombardier had numerous conversations prior to the release of the final versions of the opinions" (Reply at 3), however, are insufficient to lead the Court to conclude that the drafts are

patentee to have a full opportunity to probe ... the mind of the infringer's lawyer upon which the infringer so firmly relied"); *Mushroom Assocs. v. Monterey Mushrooms, Inc.,* 1992 WL

442892, at *5 (N.D.Cal. May 19, 1992) ("knowing what the attorney thought about infringement bears directly on the defendants' advice of counsel defense").

"likely to lead to the discovery of relevant and admissible evidence of Bombardier's state of mind." (Mot. at 5.)

Therefore, for the foregoing reasons, Simmons' motion to compel production of drafts of Pillsbury's opinions will be denied. A separate Order accompanies this Memorandum Opinion.