Michael C. VEAL, Plaintiff–Appellant,

v.

Anthony GERACI, Detective, New York City Police Department and John Doe, Police Officer, New York City Police Department, Defendants–Appellees.

No. 1159, Docket 93–9016.

United States Court of Appeals, Second Circuit.

Argued April 22, 1994.

Decided May 5, 1994.

Michael C. Veal, plaintiff-appellant pro se.

Jane S. Earle, Asst. Corp. Counsel, New York City (O. Peter Sherwood, Corp. Counsel of the City of New York City, on the brief), for defendants-appellees.

Before: OAKES, KEARSE and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff *pro se* Michael C. Veal appeals from a final judgment of the United States District Court for the Eastern District of New York, I. Leo Glasser, *Judge*, dismissing his action against defendants Anthony Geraci and John Doe under 42 U.S.C. § 1983 (1988) for damages resulting from the alleged violation of Veal's due process rights in subjecting him to an impermissibly tainted lineup. The district court dismissed the action on the ground that it was barred by the three-year statute of limitations. On appeal, Veal challenges this ruling. For the reasons below, we reject his contentions.

## BACKGROUND

On September 23, 1987, car-service driver Gerald Rene was the victim of an armed robbery in Queens, New York. He observed the robber for a total of some three minutes prior to and during the robbery. In October 1987, Veal was arrested as a suspect, and Rene, who had previously selected his picture from a photographic array, identified him in a lineup as the robber.

In the state-court criminal proceedings, Veal, represented by counsel, challenged the identification procedures, and *Wade* hearings, *see United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), were held. In the first hearing session, Rene testified that he had gone originally to the 113th Precinct to view the lineup but that police detective Geraci then informed him that the lineup would be held in the 103rd Precinct and that Rene should go there. In the second hearing session, held on February 8, 1988, Geraci added significant details. He testified that before he transported Veal to the 103rd Precinct for the lineup, he told Rene to go to the 103rd Precinct and to remain in the parking lot across the street from the front door to the precinct house until Geraci came to get him. Geraci further testified that he arrived at the 103rd Precinct and led Veal, in handcuffs, through the front door of the precinct house. After depositing Veal on the third floor, Geraci brought Rene

in from the parking lot, and the lineup ensued.

On February 10, 1988, Veal's attorney moved to suppress the lineup identification on the ground that it was tainted because the witness had evidently observed Veal in police custody just prior to the lineup. The motion was denied. Rene's in-court and lineup identifications of Veal were admitted at trial, and Veal was convicted of first-degree robbery and fourth-degree grand larceny. He was sentenced for those offenses on June 22, 1988. In 1990, his conviction was reversed by the Appellate Division, which ordered a new trial and a reopening of the *Wade* hearing to permit the court to explore whether the lineup identification and the in-court identification had been tainted. *See People v. Veal*, 158 A.D.2d 633, 551 N.Y.S.2d 602 (2d Dep't 1990) (mem.).

The present action was initiated on March 27, 1992. The complaint alleged that the actions of Geraci in taking Veal from one police precinct to another for the lineup and arranging to have Rene wait in the parking lot of the second precinct for the arrival of Geraci and Veal, thus giving Rene an opportunity to see Veal in police custody just prior to the lineup, violated Veal's due process right not to be identified through procedures that were unfairly suggestive.

Defendants moved to dismiss on the ground, *inter alia*, that the action was barred by the three-year statute of limitations. In opposition, Veal argued that his action was timely because he had not personally received the transcripts of Geraci's 1988 *Wade*-hearing testimony until March 27, 1989, and this lawsuit was commenced exactly three years thereafter. The district court granted the statute-of-limitations motion, and this appeal followed. We affirm.

## DISCUSSION

■ Under federal law, which governs the accrual of claims brought under § 1983, *see, e.g., Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir.1992), a claim accrues once the " 'plaintiff knows or has reason to know of the injury which is the basis of his action,' " *Singleton v. New York*, 632 F.2d 185, 191 (2d Cir.1980) (quoting *Bireline v. Seagondollar*, 567 F.2d 260, 263 (4th Cir. 1977), *cert. denied*, 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979)), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). The reference to "know[ledge] of the injury" does not suggest that the statute does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful. *See, e.g., Woods v. Candela*, 13 F.3d 574, 575–76 (2d Cir.1994) (claim for unlawful arrest and search accrued when, with accused's knowledge, those acts occurred, not when appellate court later vacated his conviction); *Mack v. Varelas*, 835 F.2d 995, 999 (2d Cir.1987) (claim based on sheriff's failure to produce a defense witness at trial accrued when the accused was incarcerated as a result of his conviction, not upon eventual ruling by appellate court as to whether that failure would warrant reversal of conviction); *see also Pauk v. Board of Trustees*, 654 F.2d 856, 859 (2d Cir.1981) (retaliation claim based on denial of tenure accrued when plaintiff received notice of the termination of his employment, not on the eventual date of actual discharge), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). Rather, the claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm. *See, e.g., Barrett v. United States*, 689 F.2d 324, 333 (2d Cir.1982) (§ 1983 claim accrues only after claimant knows or has reason to know of both the harm and the cause of the harm), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); *Freeze v. Griffith*, 849 F.2d 172, 175 (5th Cir.1988) (claim alleging sheriff's conspiracy to deny claimant a fair trial accrued not upon conviction but upon the later discovery of sheriff's allegedly improper conduct).

■ There is no dispute here that the statute of limitations governing Veal's claim under § 1983 is three years. *See generally Owens v. Okure*, 488 U.S. 235, 251, 109 S.Ct. 573, 582, 102 L.Ed.2d 594 (1989); *Woods v. Candela*, 13 F.3d at 575. Nor, for the reasons discussed below, is there any substantial question that Veal's injury, if any, occurred upon his conviction as a result of Rene's

identification. The only substantial question is whether the conduct underlying Veal's claim that the lineup was tainted was conduct of which Veal knew or had reason to know before his receipt of the *Wade*-hearing transcripts on March 27, 1989, *i.e.*, more than three years prior to his March 27, 1992 institution of this suit. We note that Veal attended the February 8, 1988 hearing at which Geraci's conduct was disclosed, and it may well be that Veal gained actual knowledge at that time of the conduct underlying his present claim. We need not decide that question, however, for even assuming, *arguendo,* that he did not have actual knowledge of that conduct until he received the transcripts on March 27, 1989, we conclude that under traditional principles of agency he had reason to know of the pertinent facts in 1988.

■ In general, when an agent is employed to represent a principal with respect to a given matter and acquires knowledge material to that representation, for purposes of assessing the principal's rights and liabilities vis-à-vis a third person the agent's knowledge is imputed to the principal. *See generally Restatement (Second) of Agency* §§ 9(3), 268, 272, 275 (1958). Though perhaps most often relevant in assessing a principal's liability, *see id.* § 9(3) comment *h*, §§ 268, 272, 275, this rule has general application:

> A person has notice of a fact if his agent has knowledge of the fact, reason to know it or should know it, or has been given a notification of it, under circumstances coming within the rules applying to the liability of a principal because of notice to his agent.

*Id.* § 9(3). *See also id.* § 9 comment *b* (one has notice of a fact if he has reason to know of it); *id.* comment *d* (one may have reason to know of a fact even if he fails to exercise such intelligence as he has to draw the pertinent inference from the other facts known to him). For these purposes, "knowledge" means a belief in the truth of a proposition. *See id.* comment *c.*

■ The relationship between an attorney and the client he or she represents in a lawsuit is one of agent and principal. *See, e.g., United States v. International Brother-*hood of Teamsters, 986 F.2d 15, 20 (2d Cir. 1993) (citing *Restatement of the Law Governing Lawyers* ch. 2, Introductory Note (Tent. Draft No. 5, 1992)). In the present case, it is undisputed that Veal's attorney attended both the first state-court *Wade* hearing at which Rene testified and the February 8, 1988 hearing at which Geraci disclosed the details of the events on which Veal now relies for his cause of action. Having heard that testimony, Veal's attorney knew that Geraci had caused Rene to be in a position to see Veal in custody and in isolation just prior to viewing him in the lineup. Veal's attorney quickly realized that the testimony revealed a potential tainting of the lineup identification in violation of Veal's constitutional rights, and he made a motion challenging the lineup identification on precisely that ground on February 10, 1988. Thus, whether or not Veal himself heard Geraci's testimony, Veal's attorney plainly had knowledge of the conduct giving rise to Veal's present claim, and under traditional principles of agency the attorney's knowledge must be imputed to Veal. Accordingly, Veal had reason to know of the conduct giving rise to his present claim no later than February 8, 1988, the date on which his counsel knew of it, prompting counsel to move, on Veal's behalf, to suppress the lineup identification.

■ A claim does not accrue, of course, until the challenged conduct causes the claimant injury. *See, e.g., Martin v. Merola,* 532 F.2d 191, 194 (2d Cir.1976) (per curiam); *Kaiser v. Cahn,* 510 F.2d 282, 285 (2d Cir. 1974). In some cases, a tainted lineup identification could result in an arrest that would constitute the requisite injury. Here, however, the arrest was the result of Rene's selection of Veal's picture from a photographic array; the challenged lineup followed the arrest. Given the prior photographic identification, it is questionable whether a failure by Rene to identify Veal in the lineup would have resulted in Veal's release from custody. Hence, the injury to Veal in the present case would seem to have been his 1988 conviction and imprisonment.

We conclude that Veal's present claim may have accrued as early as February 8, 1988, when the possible tainting of the lineup iden-

tification was disclosed, but that it certainly accrued no later than June 22, 1988, when Veal was sentenced for the crimes of which he was convicted with the aid of that identification. Since the present action was filed more than three years after the later of these dates, it was barred by the statute of limitations.

## CONCLUSION

We have considered all of Veal's arguments on this appeal, including his argument that as a result of his conviction he suffered "insanity" which tolled the running of the statute of limitations, and have found in them no basis for reversal. The judgment dismissing the complaint is affirmed.