ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION & BACKGROUND
Plaintiff Juan A. Laboy ("Plaintiff") commenced this action on February 24, *584 2014, against Ontario County, the Ontario County Sheriff's Office, Sheriff Philip C. Provero, deputies Rebecca Edington, Nathan Bowerman, and Patrick Fitzgerald, and Jason Housel, Esq., pursuant to 42 U.S.C. § 1983, alleging malicious prosecution, false arrest, and a claim based upon Monell v. Dep't of Social Servs. , 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), arising from a warrantless arrest inside the Plaintiff's home on August 1, 2010. (Dkt. 1). By a Decision and Order entered May 4, 2015, this Court dismissed all claims against all defendants. (Dkt. 45). Plaintiff appealed to the United States Court of Appeals for the Second Circuit, and that court affirmed in part, vacated in part, and remanded the case to this Court for further proceedings. (Dkt. 49).
Specifically, the Second Circuit agreed that this Court had properly dismissed Plaintiff's malicious prosecution and false arrest claims, but the court vacated the dismissal of Plaintiff's Monell claim against the County,[1] stating as follows:
Although the initial complaint was insufficient to state a [ Monell ] claim, the proposed amended complaint added allegations that may plausibly suggest that the County had a policy or custom, which County officials knew about and approved, of depriving arrestees of their constitutional rights. See Payton v. New York , 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Although the district court briefly considered the plausibility of a stand-alone Payton claim as pleaded in Laboy's initial complaint, ... the district court had no opportunity to consider a Payton -based Monell claim. Accordingly, we remand to the district court to determine, in the first instance, whether such a claim is plausible, would have been timely made, and if so, to permit [Plaintiff] to amend his complaint.
(Dkt. 49 at 4).
This Court held a telephone status conference on October 27, 2016, and set a briefing scheduling to address the issue remanded by the appellate court. (Dkt. 51). Plaintiff filed papers in support of his request to amend the complaint on November 28, 2016, and November 30, 2016. (Dkt. 53; Dkt. 54). The County submitted its response in opposition on December 23, 2016 (Dkt. 55), and Plaintiff replied on January 9, 2017 (Dkt. 56).
In sum, on remand, the Court must consider the narrow question of whether Plaintiff's proposed amended complaint contains a plausible Monell claim against the County based on Payton . The Court concludes that it does. Therefore, Plaintiff's request to amend the complaint (Dkt. 28) is granted, and the County's motion to dismiss (Dkt. 14) is denied insofar as the Court permits Plaintiff's amended complaint to go forward against the County with respect to his Monell claim.
DISCUSSION
The Court assumes familiarity with its May 4, 2015, Decision and Order (Dkt. 45) and will restate only the facts and background relevant to the narrow issue presently before this Court.
I. Legal Standards
A. Motion to Dismiss
" 'In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by *585 reference.' " Newman & Schwartz v. Asplundh Tree Expert Co. , 102 F.3d 660, 662 (2d Cir. 1996) (quoting Kramer v. Time Warner, Inc. , 937 F.2d 767, 773 (2d Cir. 1991) ). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." Ruotolo v. City of N.Y. , 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks omitted). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). " 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Turkmen v. Ashcroft , 589 F.3d 542, 546 (2d Cir. 2009) (quoting Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ).
"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly , 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original) (internal quotation marks omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." Goldstein v. Pataki , 516 F.3d 50, 56 (2d Cir. 2008) (alteration in original) (internal quotations marks omitted).
B. Motion to Amend
Federal Rule of Civil Procedure 15(a)(2) allows a party to amend his pleading with the Court's permission if the party cannot do so as a matter of course. A court is required to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "leave to amend may be denied if the amendment would be futile." In re Am. Exp. Co. S'holder Litig. , 39 F.3d 395, 402 (2d Cir. 1994) (citing Foman v. Davis , 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ). Thus, "[w]here a proposed amended complaint cannot itself survive a motion to dismiss," leave to amend may clearly be denied. Donovan v. Am. Skandia Life Assurance Corp. , 217 F.R.D. 325, 325 (S.D.N.Y. 2003), aff'd , 96 F. App'x 779 (2d Cir. 2004).
C. Payton and Monell
The Fourth Amendment recognizes the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has held that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Payton , 445 U.S. at 603, 100 S.Ct. 1371. In Payton , the Supreme Court considered "whether and under what circumstances an officer may enter a suspect's home to make a warrantless arrest." Id. at 575, 100 S.Ct. 1371. The Court concluded that "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." Id. at 590, 100 S.Ct. 1371.
Section 1983 provides a federal cause of action against persons who, under color of state authority, caused the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. A municipality or other local government may be liable under § 1983 only "if the governmental body itself 'subjects' a person *586 to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." Connick v. Thompson , 563 U.S. 51, 60, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) (citing Monell , 436 U.S. at 692, 98 S.Ct. 2018 ). "In other words, municipalities are responsible only for their own illegal acts, and cannot be held vicariously liable under § 1983 for their employees' actions." Cash v. Cty. of Erie , 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted).
"[T]o establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." Id. (quoting Connick , 563 U.S. at 60, 131 S.Ct. 1350 ). Official municipal policy includes "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick , 563 U.S. at 61, 131 S.Ct. 1350. To survive a motion to dismiss, the plaintiff "cannot merely allege the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Triano v. Town of Harrison, NY , 895 F.Supp.2d 526, 535 (S.D.N.Y. 2012) (internal quotation marks omitted).
"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick , 563 U.S. at 61, 131 S.Ct. 1350. For liability to attach, the failure to train must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Id. (alterations in original). Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id.
II. Analysis
A. Proposed Amended Complaint
In his proposed amended complaint, Plaintiff raises what he contends is a Payton -based Monell claim. Plaintiff alleges that "Defendant County and Sheriff Provero have created and tolerated and developed long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of plaintiff and the public." (Dkt. 32-3 at ¶ 155).[2] In support of that claim, Plaintiff alleges, as he did in his original complaint, that "[t]he deputies knew that even if there was probable cause to believe [Plaintiff] had committed a crime (and not a non-criminal violation) they did not have a warrant to arrest [Plaintiff] in his home, as was otherwise required by the [United States Constitution]." (Id. at ¶ 84). Plaintiff also alleges that it is the "policy and practice of the Sheriff's Office and the named defendants to effectuate arrests for violations that were not committed in their presence and without probable cause." (Id. at ¶ 85). He contends that "Deputy Edington ... stated under oath that she believed it was in her discretion to either arrest without a warrant or to issue an appearance ticket" (id. at ¶ 87), and that "such arrests are a common-place occurrence in Ontario County" (id. at ¶ 86).
*587 Plaintiff's proposed amended complaint contains additional allegations that did not appear in his original complaint. He alleges:
The county prosecutor confirmed in his oral argument to the court that arrests like [Plaintiff's] are typical in Ontario County by saying:
"There's no requirement and [defense counsel] hasn't identified any requirement, he cannot identify any requirement, that there be a warrant or information filed in court. In fact, that would be contrary to what we know happens on these harassment arrests every day in that they're arrested, they're either given appearance tickets or taken and arraigned and an order of protection before there's a filing. There's no requirement that any of that occur[.]"
(Id. at ¶ 88 (first alteration in original) ). The proposed amended complaint further alleges:
The county prosecutor further confirmed at sentencing that numerous top officials within the sheriff's department had attended the trial in a show of support for the propriety of Deputy Edington's actions:
"[T]he support for Deputy Edington was apparent at every turn with her extended law enforcement family with her throughout this trial. At times Sheriff Povero, Undersheriff Tillman, Lieutenant Falkey, Lieutenant Storer, Sergeant Colburn, Sergeant Cirencione, [Deputies] Dill, Bowerman, Fogarty, Nelson, Fitzgerald, Taylor and so many others were here to support her because they knew she was doing the right thing, and they knew she was doing it the right way[.]"
(Id. at ¶ 89).
B. Timeliness of Plaintiff's Monell Claim
The Court turns, first, to the timeliness of any Monell claim that Plaintiff might be able to assert based on the record in this case. Plaintiff argues that he has timely alleged a Monell claim because he brought the complaint within three years of when it became clear that his unlawful arrest was the consequence of a municipal policy or custom. (Dkt. 53 at 16-17). According to Plaintiff, he became aware of the unconstitutional policy, at the earliest, on February 25, 2011-the date on which he was sentenced in state court and the prosecutor stated that the Sheriff's office supported Deputy Edington's actions. (Id. at 17). Plaintiff contends that February 25, 2011, was the first time that he could have been made aware that there was an endorsed policy of engaging in unlawful arrests that violated the Fourth Amendment. (Id. ). The County disagrees, arguing that Plaintiff became aware that he was suffering from an alleged wrong at the time of his arrest and that his Monell claim is therefore time-barred. (Dkt. 55 at 8-9).
As a general matter, the statute of limitations for § 1983 actions arising in New York is three years. Eagleston v. Guido , 41 F.3d 865, 871 (2d Cir. 1994). However, when a plaintiff brings a Monell claim against a municipal defendant for harm caused by a policy or custom, the limitations period does not necessarily accrue at the time of the alleged constitutional violation.
In Pinaud v. County of Suffolk , 52 F.3d 1139 (2d Cir. 1995), the court observed:
Since an actionable claim under § 1983 against a county or municipality depends on a harm stemming from the municipality's "policy or custom," a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county "policy or custom."
*588 Id. at 1157 (internal citation omitted). The County argues that the quoted language in Pinaud is dictum, citing the Second Circuit's summary order in Lawson v. Rochester City Sch. Dist. , 446 F. App'x 327 (2d Cir. 2011). (Dkt. 55 at 9). In Lawson , the court called Pinaud 's discussion of the limitations period "demonstrably dictum" and held that it would adhere to the rule that a § 1983 cause of action accrues when the plaintiff "becomes aware that [he] is suffering from a wrong for which damages may be recovered in a civil action." 446 F. App'x at 329 (alteration in original). Plaintiff argues that the Second Circuit has long held, since well before Pinaud , that a single unlawful arrest does not give rise to a Monell claim; thus, the harm cannot accrue until the plaintiff becomes aware of the policy or custom. (Dkt. 53 at 16-17 (citing Singleton v. New York , 632 F.2d 185, 192-93 (2d Cir. 1980) ) ).
In Flores v. Nieva , No. 14 CIV. 7960 (KPF), 2017 WL 899942 (S.D.N.Y. Mar. 6, 2017), the City of New York made the same argument about Pinaud that the County makes here. Id. at *6. The court declined the City's invitation to deviate from Pinaud , noting that, in 2017, the Second Circuit favorably quoted the same language from Pinaud that the summary order in Lawson characterized as dictum. Id. Specifically, in Birch v. City of New York , 675 F. App'x 43 (2d Cir. 2017), also a summary order, the court held that, "[i]n light of Pinaud , the limitations period for [the plaintiff's] Monell claims did not begin until such time as he should have known that [the complained of conduct] resulted from the City's 'policy or custom.' " Id. at *45. The Flores court noted that "if summary orders are to be given such weight, then the Court would do well to be equally mindful of the Circuit's summary order in Birch ...." 2017 WL 899942, at *6.
The case law in this Circuit overwhelmingly follows Pinaud. See, e.g. , Egan v. Kennedy , No. 04-CV-6626 CJS, 2008 WL 4647740, at *3 (W.D.N.Y. Oct. 17, 2008) (applying Pinaud and denying motion to dismiss because "the Complaint does not indicate when Plaintiff became aware, or should have become aware, of the alleged county policy"); Ruiz v. Suffolk Cty. Sheriff's Dep't , No. 03-CV-3545 DLI ETB, 2008 WL 4516222, at *13 (E.D.N.Y. Oct. 2, 2008) (holding that the plaintiff's claim was subject to delayed accrual because basis for Monell claim was not apparent to the plaintiff at time of acts giving rise to complaint); Damino v. City of New York , No. CV-99-3638 (DGT)(RLM), 2004 WL 2032515, at *5 (E.D.N.Y. Sept. 13, 2004) (citing Pinaud and holding that the plaintiff presented a genuine issue of fact as to when he knew or should have known of alleged policy); Clinton v. City of New York , No. 98 CIV. 3810 (JSM), 1999 WL 105026, at * 1-2 (S.D.N.Y. Mar. 2, 1999) (applying Pinaud where court found that basis of the plaintiff's Monell claim was not apparent until more than two years after his arrest).
Even so, the County cites a number of cases for the proposition that where a plaintiff is present for and aware of an alleged wrongful act of a police officer, claims stemming from the act accrue immediately. (Dkt. 55 at 9-10). The Court concludes that those cases are distinguishable.
Two of the cases that the County cites are factually different from this case because they address claims against individual defendants, and not a municipal defendant. In Hueber v. McCune , 589 F. App'x 9 (2d Cir. 2014), the court noted that the requirement that a plaintiff must be aware of a constitutional injury "does not suggest that the statute does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful." Id. at 10. In that case, the plaintiff had alleged that "the individual defendants *589 entered his residence in violation of the Fourth Amendment." Hueber v. McCune , No. 1:14-CV-00049-A, 2014 WL 2047763, at *3 (W.D.N.Y. May 19, 2014), aff'd , 589 F. App'x 9 (2d Cir. 2014). The plaintiff did not allege a Fourth Amendment-based Monell claim.
Similarly, in Veal v. Geraci , 23 F.3d 722 (2d Cir. 1994), the plaintiff brought due process claims against a police officer and a police detective for allegedly subjecting him to an impermissibly tainted lineup. Id. at 723. In affirming the judgment dismissing the complaint on statute of limitations grounds, the Second Circuit held that the "claim accrues when the alleged conduct has caused the claimant harm and the claimant knows or has reason to know of the allegedly impermissible conduct and the resulting harm." Id. at 724. However, as in Hueber , the plaintiff did not allege the existence of a municipal policy or custom. The Pinaud line of cases makes clear that the statute of limitations analysis differs when the plaintiff has alleged a Monell claim against a municipal defendant.
The County also cites Galberth v. Washington , No. 14 CIV. 691 (KPF), 2016 WL 1255738 (S.D.N.Y. Mar. 29, 2016), in which the plaintiff brought a Monell claim against the city for failure to train or supervise its employees at Rikers Island, contributing to deliberate indifference to the plaintiff's need for mental health treatment. Id. at *3. The court held that the plaintiff "knew or should have known that the City had an unconstitutional policy or custom by April 2011, when multiple officers at Rikers Island declined his requests for mental health treatment, even after they learned of his suicide attempt." Id. at *9. Galberth is distinguishable from this case because here, Plaintiff brings a Monell claim based on a single arrest, whereas in Galberth , various defendants denied the plaintiff's requests for mental health treatment, suggesting the existence of a policy or custom.
The Court concludes that, as articulated in Pinaud , the statute of limitations on a Monell claim begins to run when the plaintiff "knew about, or at least had reason to come to know about, the policy or custom." See Pinaud , 52 F.3d at 1157 ; see also Flores , 2017 WL 899942, at *7. If Plaintiff had no reason to know of the policy until after the occurrence of the alleged unconstitutional action, then the statute of limitations runs from the later date.
When a defendant raises the statute of limitations as an affirmative defense in a motion to dismiss, the defendant bears the burden of demonstrating, based on the allegations in the complaint, that the claim is untimely. Egan , 2008 WL 4647740, at *3. "A motion to dismiss on the basis that a claim is time-barred may only be granted when the allegations in the complaint make clear that the claim is barred by the limitations period." Omollo v. Citibank, N.A. , No. 07 CIV. 9259 (SAS), 2008 WL 1966721, at *3 (S.D.N.Y. May 6, 2008), aff'd , 361 F. App'x 288 (2d Cir. 2010) (internal quotation marks omitted). At this stage of the proceedings, the Court cannot conclude, based on the allegations in the proposed amended complaint, that any Payton -based Monell claim is time-barred. As noted in its May 4, 2015, Decision and Order, an individual Payton claim would be time-barred because Plaintiff brought this action on February 24, 2014, more than three years after his arrest on August 1, 2010. (Dkt. 45 at 24 n.3). However, based on Plaintiff's allegations, the Court cannot conclude that a Monell claim premised on an alleged underlying Payton violation would also be time-barred. Therefore, at the motion to dismiss stage, the statute of limitations does not operate as a bar to Plaintiff's Payton -based Monell claim.
*590 C. Although Inartfully Drafted, Plaintiff's Proposed Amended Complaint Sufficiently Alleges a Payton -Based Monell Claim
Plaintiff argues that his proposed amended complaint asserts a Payton -based Monell claim because he alleges that he was subjected to a warrantless in-home arrest in violation of the Fourth Amendment as a result of "an unwritten policy or practice of Fourth Amendment violations in Ontario County." (Dkt. 53 at 9-12). While inartfully pled, and while it is questionable whether Plaintiff will ultimately be able to sustain the claim, at this stage of the proceedings Plaintiff may proceed with a Monell claim based on Payton .
In the proposed amended complaint, Plaintiff alleges that "[t]he deputies knew that even if there was probable cause to believe [Plaintiff] had committed a crime (and not a non-criminal violation) they did not have a warrant to arrest [Plaintiff] in his home, as was otherwise required by the [United States Constitution]." (Dkt. 32-3 at ¶ 84).
Plaintiff further alleges that arrests like the one to which he was subjected are commonplace: "It is part of the policy and practice of the Sheriff's Office and the named defendants to effectuate arrests for violations that were not committed in their presence and without probable cause," and "Deputy Edington ... stated under oath that she believed it was in her discretion to either arrest without a warrant or to issue an appearance ticket." (Id. at ¶¶ 85-87). Moreover, Plaintiff alleges:
[The County and Sheriff Povero] developed practices and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of plaintiff's constitutional and federal rights as set forth here and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.
(Dkt. 32-3 at ¶ 154). He continues:
Defendant County and Sheriff Provero have created and tolerated and developed long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of plaintiff and the public.
(Id. at 1155).
Plaintiff also relies on the prosecutor's statements during the state court proceedings to support a Monell claim. (Dkt. 53 at 12-14). The prosecutor referenced the warrant requirement, stating, " 'There's no requirement and [defense counsel] hasn't identified any requirement, he cannot identify any requirement, that there be a warrant or information filed in court.' " (Dkt. 32-3 at ¶ 88 (quoting the prosecutor) ). He also voiced " 'support for Deputy Edington ... at every turn.' " (Id. at ¶ 89 (quoting the prosecutor) ). Plaintiff argues that the prosecutor was "[p]resumably ... well-aware of how arrests are usually made," and "it appears that the prosecutor had personal knowledge that all of the top-brass within the Sheriff's Department endorsed Deputy Edington's actions...." (Dkt. 53 at 13-14).
The County responds that Plaintiff's allegations regarding the "policy and practice of the Sheriff's Office" (Dkt. 32-3 at ¶¶ 85-87), as well his reliance on the prosecutor's statements (id. at ¶¶ 88-89),[3] are *591 misplaced. (Dkt. 55 at 16-17). According to the County, Plaintiff, in his original complaint, and the prosecutor, during oral argument, were referring to N.Y. C.P.L § 140.10, the statute on which Plaintiff based his false arrest claim. (Id. ). As Plaintiff states in his complaint, N.Y. C.P.L. § 140.10(1)(a) provides that "the police are not authorized to arrest a person for a violation-level offense that did not take place in the officer's presence." (Dkt. 32-3 at ¶ 30). The County argues that Plaintiff's defense attorney never raised an issue concerning a Payton theory at trial, and Plaintiff is now attempting to recast his false arrest claims as a Payton -based Monell claim. (Dkt. 55 at 13-18).
The Court agrees that the prosecutor's remarks appeared to be focused primarily on N.Y. C.P.L. § 140.10(1)(a), and the Court also agrees that Plaintiff's initial focus was not directed at a Payton -bassd claim.[4] Nonetheless, at this stage of the proceedings, the Court concludes that Plaintiff has alleged enough facts tending to support, at least circumstantially, a plausible inference that the County had a municipal policy or custom favoring warrantless arrests inside an individual's home in violation of Payton . Thus, the allegations in the proposed amended complaint are sufficient to state a Monell claim. Therefore, Plaintiff is granted leave to file his proposed amended complaint to pursue a Payton -based Monell claim, and the County's motion to dismiss the Monell claim is denied.
CONCLUSION
Plaintiff's request to amend the complaint (Dkt. 28) is granted and the County's motion to dismiss (Dkt. 14) is denied with respect to the Monell claim. Plaintiff is directed to file the proposed amended complaint (Dkt. 32-3) within 21 days of the entry of this Decision and Order. The Clerk of Court is directed to terminate all defendants from this action with the exception of the County of Ontario.
SO ORDERED.

Consistent with the Second Circuit's opinion (Dkt. 49) and Plaintiff's proposed amended complaint (Dkt. 32-3), the County is the only remaining defendant.

On November 30, 2016, Plaintiff submitted a revised version of his proposed amended complaint with "strikethroughs" of the claims and allegations that were dismissed by this Court and affirmed by the Second Circuit. (Dkt. 54-1). The Court will cite to the original proposed amended complaint (Dkt. 32-3) throughout this decision. The cited portions are identical in the two versions of the proposed amended complaint.

The Court acknowledges the County's argument that even if the prosecutor's statements during the state court proceedings were in reference to a Fourth Amendment violation, those statements would not be sufficient to state a Payton -based Monell claim against the County, which is a separate entity from the district attorney's office. (Dkt. 55 at 17). Nonetheless, at this stage of the proceedings, the comments may at least be considered in evaluating whether a Payton -bassd Monell claim has been plausibly alleged.

The County argues that Plaintiff asserts for the first time, on remand, that his Monell claim is based on Payton , and previously any such claim was based on a violation of N.Y. C.P.L. § 140.10. (Dkt. 55 at 18). While the Plaintiff's position concerning a Monell claim has evolved, the Second Circuit remanded the case for the specific purpose of addressing whether Plaintiff could pursue a Payton -based Monell claim, and thus, this Court cannot consider Plaintiff's Payton claim waived.