Droney, Circuit Judge:
Plaintiff-Appellant Edward G. McDonough, the former Democratic Commissioner of the Rensselaer County Board of Elections, was acquitted in New York state court of forging absentee ballots in a local primary election. He appeals from two subsequent decisions of the United States District Court for the Northern District of New York (D'Agostino, J. ) dismissing his claims against Defendant-Appellee Youel Smith under 42 U.S.C. § 1983 related to that prosecution. He alleged (1) denial of due process based on fabricated evidence and (2) malicious prosecution. The district court determined that (1) McDonough's due process claim was untimely and dismissed it as to all Defendants[1] and (2)
*263 Smith, a Special District Attorney who prosecuted McDonough, was entitled to absolute prosecutorial immunity on McDonough's malicious prosecution claim and therefore dismissed that claim with respect to Smith.[2]
Pursuant to Federal Rule of Civil Procedure 54(b), the district court entered judgment as to Smith and certified the decisions dismissing the two claims against him for interlocutory appeal by McDonough.[3]
For the reasons that follow, we agree with the district court's conclusion that McDonough's due process claim was untimely, and thus barred by the applicable statute of limitations. We also agree with the district court that Smith is entitled to absolute immunity as to the malicious prosecution claim. We therefore AFFIRM the dismissal of those claims.
BACKGROUND
During the 2009 Working Families Party primary election in the City of Troy, New York, several individuals associated with the Democratic and Working Families Parties forged signatures and provided false information on absentee ballot applications and absentee ballots in order to affect the outcome of that primary. Those individuals then submitted the forged absentee ballot applications to McDonough. McDonough, as a commissioner of the Rensselaer County elections board, was responsible for processing those applications.[4] McDonough approved the forged applications, but subsequently claimed he did not know that they had been falsified.
The plot to influence the primary was eventually discovered. Defendant Richard McNally, the elected District Attorney for Rensselaer County, was disqualified from the ensuing investigation because certain of those allegedly involved in the scheme had worked on his prior campaign. The state court then appointed Smith as a Special District Attorney to lead the investigation and potential prosecution. McDonough claimed that Smith then engaged in an elaborate scheme to frame McDonough for the crimes by, among other things, fabricating evidence. This alleged scheme included using forged affidavits, offering false testimony, and using faulty DNA methods for analyzing materials used in processing the ballot applications, all despite *264 Smith knowing that McDonough was innocent.
McDonough claims that Smith presented the fabricated evidence to a grand jury. The grand jury subsequently indicted McDonough on more than three dozen state law counts of felony forgery in the second degree and a similar number of counts of felony criminal possession of a forged instrument in the second degree. See N.Y. Penal Law §§ 170.10, 170.25. The case against McDonough proceeded to trial but ended in a mistrial. McDonough was then retried, again with Smith as the prosecutor. That trial ended in McDonough's acquittal on December 21, 2012.
On December 18, 2015, McDonough filed this action under 42 U.S.C. § 1983, claiming that the Defendants (including Smith) (1) had violated his right to due process by fabricating evidence and later using it against him before the grand jury and in his two trials and (2) were liable for malicious prosecution.
Several Defendants filed motions to dismiss McDonough's due process claim. They argued, in part, that it was barred by the applicable three-year statute of limitations because the allegedly fabricated evidence had been disclosed to McDonough, and his claim therefore accrued, well before the second jury acquitted him.[5]
In opposing the Defendants' motions, McDonough argued that because his fabrication of evidence claim was based on the actions of Smith, a prosecutor, it was analogous to a malicious prosecution claim, and therefore did not accrue until the second trial terminated in his favor. McDonough also contended that his due process claim did not accrue until the termination of the second trial under the Supreme Court's decision in Heck v. Humphrey , 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). He argued that his fabrication of evidence claim would challenge the validity of the pending criminal proceedings against him, and thus, under Heck , did not accrue until he was acquitted.
In two decisions, dated September 30, 2016 and December 30, 2016, the district court dismissed McDonough's due process claims against all Defendants as untimely and his malicious prosecution claim against Smith on the basis of absolute prosecutorial immunity.[6]
As to the due process claim, the district court reasoned that McDonough's claim was "based upon the fabrication of evidence" and it "accrued when he knew or should have known that such evidence was being used against him and not upon his acquittal in his criminal case." J. App. 155. As the district court indicated, McDonough's complaint had alleged "that all of the fabricated evidence was either presented at grand jury proceedings or during his two trials, all of which occurred" more than three years before he filed suit. J. App. 156.
The district court also concluded that Smith was protected by absolute immunity as to the malicious prosecution claim.
DISCUSSION
I. Standard of Review
"We review de novo the grant of a motion to dismiss, accepting all factual allegations *265 in the complaint as true and drawing inferences from those allegations in the light most favorable to the plaintiff." Bascunan v. Elsaca , 874 F.3d 806, 810 (2d Cir. 2017) (alterations and internal quotation marks omitted); see also Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc. , 810 F.3d 861, 865 (2d Cir. 2015) ("We review de novo a district court's grant of a motion to dismiss, including its legal interpretation and application of a statute of limitations ....").
II. The Due Process Claim
McDonough argues that his due process claim is timely because he alleged that Smith fabricated evidence in order to file baseless charges against him, and thus his claim is most analogous to a malicious prosecution action, which does not accrue until favorable termination of the prosecution, here the verdict of acquittal. See Poventud v. City of New York , 750 F.3d 121, 131 (2d Cir. 2014). In the alternative, McDonough asserts (1) that his claim is timely in light of Heck v. Humphrey , and (2) that the use of fabricated evidence against him constituted a continuing violation that renders his claim timely.
We conclude that the nature of McDonough's due process claim is different from a malicious prosecution claim, and that it accrued when (1) McDonough learned that the evidence was false and was used against him during the criminal proceedings; and (2) he suffered a loss of liberty as a result of that evidence. Because both occurred more than three years prior to McDonough filing this action, we agree with the district court that McDonough's due process claim is time-barred.[7] We also reject McDonough's additional arguments as to the due process claim.
a. The Accrual of § 1983 Actions for Fabrication of Evidence and Malicious Prosecution
The statute of limitation for claims brought under 42 U.S.C. § 1983 is generally "the statute of limitations for the analogous claim under the law of the state where the cause of action accrued." Spak v. Phillips , 857 F.3d 458, 462 (2d Cir. 2017). It is undisputed that the applicable statute here is New York's three-year limitations period for personal injury claims. See Smith v. Campbell , 782 F.3d 93, 100 (2d Cir. 2015) (applying three-year personal injury limitations period to retaliatory prosecution claim); see also N.Y. C.P.L.R. § 214(5) (personal injury statute of limitations).
"However, the time at which a claim ... under [§] 1983 accrues is a question of federal law that is not resolved by reference to state law." Spak , 857 F.3d at 462 (quoting Wallace v. Kato , 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) ) (emphasis in original). Instead, federal "courts apply general common-law tort principles to determine the accrual date of a [§] 1983 claim." Spak , 857 F.3d at 462 (alterations and internal quotation marks omitted). It "is the standard rule that accrual occurs when a plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Smith , 782 F.3d at 100 (internal quotation marks omitted). Put other ways, an action accrues "when the wrongful act or omission results in damages," id. , and "once the plaintiff knows or has reason to know of the injury which is the basis of his action," Veal v. Geraci , 23 F.3d 722, 724 (2d Cir. 1994) (internal quotation marks omitted).
*266 We next consider the accrual rules for the two types of claims that McDonough has brought against Smith in this case: fabrication of evidence and malicious prosecution.
Under the Fifth and Fourteenth Amendments' Due Process Clauses, individuals have "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer ...." Zahrey v. Coffey , 221 F.3d 342, 349 (2d Cir. 2000). The forwarding by an investigating officer to a prosecutor of fabricated evidence, or in this instance, the alleged creation or use of such evidence by both investigating officers and the prosecutor, "works an unacceptable 'corruption of the truth-seeking function of the trial process.' " Ricciuti v. N.Y.C. Transit Auth. , 124 F.3d 123, 130 (2d Cir. 1997) (quoting United States v. Agurs , 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ).
Applying our standard accrual rules, a fabrication of evidence claim accrues (1) when a plaintiff learns of the fabrication and it is used against him, see Veal , 23 F.3d at 724, and (2) his liberty has been deprived in some way, see Zahrey , 221 F.3d at 348. Because there is no dispute in this case that McDonough suffered a liberty deprivation because of that evidence when he was arrested and stood trial, we focus our attention on the first prong. See id.
The statute of limitations begins to run on a fabrication of evidence claim against law enforcement officials under § 1983 when the plaintiff has " 'reason to know of the injury which is the basis of his action.' " Veal , 23 F.3d at 724 (quoting Singleton v. New York , 632 F.2d 185, 191 (2d Cir. 1980) ). "The reference to 'know[ledge] of the injury 'does not suggest that the statute does not begin to run until the claimant has received judicial verification that the defendants' acts were wrongful." Id. (second alteration in original).
In Veal , a police detective manipulated a lineup by arranging for the witness to view the criminal defendant (later the plaintiff in the § 1983 fabrication of evidence lawsuit) entering the police station in handcuffs prior to conducting the lineup. Id . at 723-24. However, at the time of the lineup, the defendant had already been arrested for the crime based on the same witness's identification of him from a prior photo array. Id. at 725. The evidence of the identification from the lineup was later used at trial and the defendant was convicted. Id. at 724. The Appellate Division of the New York Supreme Court reversed the conviction because of the use of the suggestive lineup and the resulting in-court identification. Id.
Veal brought his § 1983 due process claim within three years of the decision by the Appellate Division but more than three years after he had been sentenced following his trial. Id. We concluded that the statute of limitations had expired before the suit was instituted because Veal was made aware of the tainted lineup when its circumstances were disclosed before his trial (and he moved to suppress its use at trial), more than three years before suit was brought. Id. at 724-25. The date of the reversal of the conviction by the Appellate Division was not the accrual date of the due process violation; rather it was as early as when the circumstances of the lineup were disclosed at the pretrial hearing, and certainly no later than the date of conviction and sentencing, because those later dates were when the liberty deprivation occurred based on the effect of the tainted evidence at trial. Id. at 725-26.[8]
*267 We acknowledge that the Third, Ninth, and Tenth Circuits have held that the due process fabrication cause of action accrues only after criminal proceedings have terminated because those circuits have concluded that fabrication of evidence claims are analogous to claims of malicious prosecution, which require termination of the criminal proceeding in the defendant's favor before suit may be brought. See Floyd v. Attorney Gen. of Pennsylvania , 722 F. App'x. 112, 114 (3d Cir. 2018) ; Bradford v. Scherschligt , 803 F.3d 382, 388-89 (9th Cir. 2015) ("To determine the proper date of accrual, we look to the common law tort most analogous to Bradford's claim. As we have explained, the right at issue ... is the right to be free from [criminal] charges based on a claim of deliberately fabricated evidence. In this regard, it is like the tort of malicious prosecution, which involves the right to be free from the use of legal process that is motivated by malice and unsupported by probable cause.") (second alteration in original) (internal citation and quotation marks omitted); Mondragon v. Thompson , 519 F.3d 1078, 1083 (10th Cir. 2008) ("After the institution of legal process, any remaining constitutional claim is analogous to a malicious prosecution claim. ... Because the statute of limitations does not start running before the elements of a claim are satisfied, the statute of limitations for this due process claim cannot start until the plaintiff has achieved a favorable result in the original action."). We disagree with those decisions. Because the injury for this constitutional violation occurs at the time the evidence is used against the defendant to deprive him of his liberty, whether it be at the time he is arrested, faces trial, or is convicted, it is when he becomes aware of that tainted evidence and its improper use that the harm is complete and the cause of action accrues. Indeed, the harm-and the due process violation-is in the use of the fabricated evidence to cause a liberty deprivation, not in the eventual resolution of the criminal proceeding.
We thus conclude that, under the circumstances here, the § 1983 action based on fabrication of evidence accrued when McDonough (1) learned of the fabrication of the evidence and its use against him in criminal proceedings, and (2) was deprived of a liberty interest by his arrest and trial. For McDonough, this was, at the earliest, when he was indicted and arrested and, at the latest, by the end of his first trial, after all of the prosecution's evidence had been presented.[9] "[J]udicial verification that the defendants' acts were wrongful" is not required, and thus accrual did not have to await McDonough's acquittal. Veal , 23 F.3d at 724.
In contrast, we have long held that malicious prosecution claims brought pursuant to § 1983 do not accrue until the underlying criminal proceedings against the plaintiff terminate in his favor.
Manganiello v. City of New York , 612 F.3d 149, 161 (2d Cir. 2010). Favorable termination is an element of malicious prosecution under New York law and also for the Constitution-based tort. Id. A plaintiff therefore cannot have a complete cause of action unless and until the criminal proceedings against him terminate *268 favorably.[10] Accordingly, the district court properly concluded that the malicious prosecution claims were timely.[11]
That McDonough alleged that a prosecutor, rather than a law enforcement officer, fabricated evidence does not delay the accrual of his due process claim until accrual of his malicious prosecution claim. The constitutional right violated by fabricated evidence is the right not to be arrested or to face trial based on such evidence. See Zahrey , 221 F.3d at 348. That violation and its harm were complete when the fabricated evidence was used by Smith against McDonough in those ways. It matters not, in the circumstances here, whether it was Smith or a law enforcement officer who created and used the allegedly false evidence; whoever causes that deprivation of liberty is a proper defendant for this constitutional cause of action. But the defendant's role makes no difference when the claim accrues. The separate and distinct harm that malicious prosecution claims are designed to address afforded McDonough a remedy to the extent that he alleged that fabricated evidence was created to prosecute him maliciously and without probable cause.[12] See id. (discussing claim based on prosecutor's fabrication of evidence).
McDonough argues that, notwithstanding its date of accrual, his due process claim is timely as a result of the Supreme Court's decision in Heck , 512 U.S. at 486-87, 114 S.Ct. 2364 (concluding that civil complaint must be dismissed in a malicious prosecution-type case if a judgment in favor of the plaintiff would "imply the invalidity of his conviction"). That argument, however, is foreclosed by the Supreme Court's subsequent decision in Wallace , 549 U.S. at 393-94, 127 S.Ct. 1091. In Wallace , the plaintiff brought a false arrest claim under § 1983. The conviction following that arrest was reversed by the state appeals court because the arrest was without probable cause, thus invalidating a subsequent confession admitted at trial. Id. at 386-87, 127 S.Ct. 1091. The Supreme Court held that the civil false arrest claim accrued at the time of the initial arrest and the ultimate reversal of the conviction was not necessary to complete the false arrest constitutional tort. Id. at 394, 127 S.Ct. 1091. Even though the false arrest claim might impugn a future conviction, Heck did not delay its accrual date, and the civil action could proceed even though the criminal case had not been resolved at that time.[13] Id. at 393, 127 S.Ct. 1091. Thus, the Court clarified that, "the Heck rule for deferred accrual is called into play only when there exists a conviction or sentence that has not been invalidated, that is to say, an outstanding criminal judgment."
*269 Wallace , 549 U.S. at 393, 127 S.Ct. 1091 (internal punctuation and quotation marks omitted) (emphasis in original). McDonough was never convicted, so Heck is not "called into play." Id.
Finally, McDonough argues that his due process claim is timely because his "wrongful prosecution [constituted] a continuing violation," that only ceased on his acquittal. Appellant's Br. 50. We are not persuaded. As we have explained: "Characterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy or as a single series of interlocking events does not postpone accrual of claims based on individual wrongful acts." Pinaud v. County of Suffolk , 52 F.3d 1139, 1156 (2d Cir. 1995) (internal quotation marks omitted). Smith allegedly fabricated evidence, then presented that evidence to a grand jury, and later used it at McDonough's trials. The cause of action accrued when McDonough became aware of the fabricated evidence, which was, at the latest, during the first trial. The continuation of the prosecution does not, by itself, constitute a continuing violation that would postpone the running of the statute of limitations until his acquittal.[14]
III. The Malicious Prosecution Claim
Prosecutors are protected by absolute immunity for their acts that are "intimately associated with the judicial phase of the criminal process" and their role as advocates, but they receive only qualified immunity for acts that are investigatory in nature. Simon v. City of New York , 727 F.3d 167, 171-72 (2d Cir. 2013) (internal quotation marks omitted). The district court concluded that Smith was entitled to absolute immunity from McDonough's malicious prosecution claim because even though McDonough's complaint suggests that, at times, Smith was acting in an investigatory capacity, "the distinction between a prosecutor's investigative and prosecutorial functions is immaterial to a malicious prosecution claim, since prosecutors are generally immune from such claims." J. App. 204; see also Shmueli v. New York , 424 F.3d 231, 238 (2d Cir. 2005). We agree. Although prosecutors may be eligible only for qualified immunity when functioning in an investigative capacity, they are entitled to absolute immunity when acting as advocates for the state, such as initiating prosecutions or at trial. See Zahrey , 221 F.3d at 346 (holding, in § 1983 cases, that prosecutorial "[a]ctions taken as an advocate enjoy absolute immunity, while actions taken as an investigator enjoy only qualified immunity" (internal citation omitted) ); see also Shmueli , 424 F.3d at 237 ("[T]he initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions ...."). As the malicious prosecution claim relates only to Smith's prosecutorial function, it is barred by absolute immunity.[15]
*270 CONCLUSION
McDonough's due process claim accrued when (1) the purportedly fabricated evidence was used against him and he had knowledge of that use, and (2) he was deprived of a liberty interest. Because that occurred more than three years before he filed suit, we AFFIRM the decision of the district court dismissing that claim. We also AFFIRM the decision of the district court that Smith was entitled to absolute immunity for the malicious prosecution claim.

The Defendants are primarily individuals allegedly associated with either the purported fraudulent scheme that formed the basis for McDonough's prosecution or members of law enforcement responsible for his investigation and prosecution. McDonough has alleged conspiracies involving both types of defendants.

McDonough's claims against Smith were brought against him in his official and individual capacities. The district court dismissed the former on the basis of Eleventh Amendment immunity. That decision is not challenged in this appeal. Thus, it is only the individual capacity claims that we address.

Defendant John J. Ogden, a New York State Police Trooper who worked with Smith as an investigator in the criminal case against McDonough, has filed a brief in this court arguing that the district court correctly concluded that McDonough's due process claim was time-barred. Although this Court previously granted Ogden's motion to intervene for the purpose of seeking a stay pending a reconsideration motion in the district court, the judgment entered by the district court under Federal Rule of Civil Procedure 54(b) and authorization for interlocutory appeal only applied to Defendant-Appellee Smith.

McDonough, as the Democratic Rensselaer County Elections Commissioner, is responsible for ensuring that all qualified voters may exercise their right to vote. See Board of Elections, www.rensco.com/departments/board-of-elections/ (last visited Jun. 20, 2018). Part of the responsibilities of a Board of Elections, and by extension, a Commissioner, is to receive applications for absentee ballots and determine whether the applicants are qualified to vote. N.Y. Elec. Law § 8-402(1). McDonough, as an elections commissioner, was a full-time employee of Rensselaer County.

Although Smith filed a motion to dismiss McDonough's complaint, he did not argue that McDonough's due process claim was untimely. Nonetheless, the district court concluded, as other Defendants had raised untimeliness issues as to the fabrication of evidence claim, that the claim was also untimely as to Smith. Plaintiff does not challenge that Smith may assert the untimeliness of that claim in this appeal.

The district court also determined that McDonough's malicious prosecution claim was timely because it had not accrued until his acquittal. That claim is still proceeding in the district court as to other Defendants.

At times, McDonough characterizes the fabrication of evidence claim against Smith as a conspiracy to fabricate evidence with other Defendants. That does not affect our conclusion as to the accrual of that claim.

District courts in this Circuit have followed Veal and concluded that a § 1983 claim based on fabricated evidence "accrues when the plaintiff learns or should have learned that the evidence was fabricated and such conduct causes the claimant some injury." Mitchell v. Home , 377 F.Supp.2d 361, 373 (S.D.N.Y. 2005)

McDonough does not allege that fabricated evidence was used against him in the second trial that was not presented in the first.

The elements of a malicious prosecution claim require a plaintiff to establish that "(1) the defendant initiated a prosecution against [the] plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." Ricciuti , 124 F.3d at 130. The elements are the same for the New York tort and the constitutional one. See id. ; Colon v. City of New York , 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983).

The district court, however, concluded that Smith was entitled to absolute immunity from the malicious prosecution claim. That decision is addressed later in this opinion.

As one district court in this Circuit aptly explained: "A right to a fair trial claim is distinct from a malicious prosecution claim." Bailey v. City of New York , 79 F.Supp.3d 424, 446 (E.D.N.Y. 2015) (emphasis added).

The Supreme Court in Wallace stated that there may be circumstances where the district court might exercise its discretion to stay the civil action until the criminal case is resolved, but that is not relevant here. Wallace , 549 U.S. at 393-94, 127 S.Ct. 1091.

We are also not persuaded by McDonough's reliance on the Supreme Court's recent decision in Manuel v. City of Joliet, Ill. , which held that a plaintiff (formerly a criminal defendant) may seek damages under 42 U.S.C. § 1983 concerning his pretrial detention on the ground that it violated the Fourth Amendment for the period of pretrial detention after his arrest. --- U.S. ----, 137 S.Ct. 911, 914, 197 L.Ed.2d 312 (2017). That a claim under the Fourth Amendment may be based on events occurring after an arrest does not affect our conclusion that McDonough's due process claim accrued well before his acquittal, and the Supreme Court stated in Manuel that its recognition that the Fourth Amendment applies to a period after the arrest did not necessarily alter the accrual date of that and other causes of action, and left the question for the Courts of Appeals to resolve. Id. at 922.

McDonough also asserts on appeal that Smith's appointment as Special District Attorney was invalid under New York law and that the conduct McDonough was charged with in the indictment could not meet the elements of the various state criminal statutes. In order to strip Smith of his absolute prosecutorial immunity, McDonough would be required to show Smith proceeded despite a "clear absence of all jurisdiction" for the prosecution. Barr v. Abrams , 810 F.2d 358, 361 (2d Cir. 1987). He has not done so. Also, as to the claim that Smith was not properly appointed, the correct forum for such a claim would be in the New York courts. In Working Families Party v. Fisher , 23 N.Y.3d 539, 992 N.Y.S.2d 172, 15 N.E.3d 1181 (2014), the New York Court of Appeals held that the method for challenging the appointment of a special prosecutor is through a N.Y. C.P.L.R. Article 78 proceeding. McDonough did not pursue the Article 78 course to invalidate Smith's appointment. Rather, McDonough alleged in his complaint that he sought to have Smith disqualified by petitioning the County to file an action in the state courts to nullify Smith's appointment, and later filing a motion in his criminal case to dismiss the charges on the basis that Smith's appointment was unlawful. That motion was denied. As to the claim concerning the New York criminal statutes, the appropriate forum for challenging the application of the state criminal statutes to McDonough's alleged conduct was in McDonough's two state criminal trials, not during this subsequent civil action under § 1983. To the extent he argues that this should support his malicious prosecution claim, the argument does not affect Smith's absolute immunity for his prosecutorial conduct, as it is the heartland of such a protection. See Imbler v. Pachtman , 424 U.S. 409, 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (holding that absolute immunity protects prosecutors for their conduct "intimately associated with the judicial phase of the criminal process ....").